**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CUTBERTO VIRAMONTES, an individual and resident of Cook County, Illinois, *et al.*, | |
| Plaintiffs, | Case No.      1:21-cv-04595 |
| v. | Assigned Judge:    Rebecca R. Pallmeyer |
| THE COUNTY OF COOK, a body politic and corporate, *et al.*, | Designated Magistrate Judge:    Susan E. Cox |
| Defendants. | |

## <u>COUNTY DEFENDANTS' ANSWER TO PLANTIFFS' COMPLAINT</u>

Defendants The County of Cook, a body politic and corporate, Toni Preckwinkle, in her official capacity as County Board President and Chief Executive Officer of Cook County, Kimberly M. Foxx, in her official capacity as State's Attorney, and Thomas Dart, in his official capacity as Sheriff (collectively the "County Defendants"), by their attorney, Kimberly M. Foxx, State's Attorney of Cook County, through Hellin Jang, Assistant State's Attorney, answer Plaintiffs' Complaint as follows:

## <u>INTRODUCTION</u>

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, citizens such as Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya who are legally eligible to possess and acquire firearms, have a fundamental, constitutionally guaranteed right to keep common firearms for defense of self and family and for other lawful pursuits.

**ANSWER:** County Defendants admit that the allegations contained in the first sentence of this paragraph state, in part, the Second Amendment to the United States Constitution,

which reads "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." County Defendants deny the remaining allegations in this paragraph.

2. But Defendants have enacted and enforced a flat prohibition on the gift, transfer, acquisition, carry, or possession, of many common semiautomatic rifles – tendentiously labeled "assault weapons" – by ordinary citizens, making it criminal for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* Code of Ordinances of Cook Cnty., III. §§ 54-212, 54-214(a) (Dec. 15, 2020), https://bit.ly/2Lcts75.

> **ANSWER:** County Defendants admit it is unlawful to manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire, carry or possess any assault weapon or large capacity magazine in Cook County, except the sale or transfer to, or possession by individuals permitted by the Cook County Ordinance, and except the transportation of these weapons if they are broken down and in a nonfunctioning state and are not immediately accessible to any person. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

3. The County's very limited exemptions for certain persons from this broad criminal statute do not allow typical law-abiding citizens to keep and bear these common firearms. *See id.* § 54-212(a).

> **ANSWER:** County Defendants deny the allegations in this paragraph.

4. Defendants' enactment and enforcement of Cook County's prohibition on common semiautomatic rifles tendentiously and inaccurately labeled assault weapons denies individuals who reside in the County, including individual Plaintiffs and members of SAF and FPC, their fundamental, individual right to keep and bear common arms.

**ANSWER:**    County Defendants deny the allegations in this paragraph.

5.        To be sure, Plaintiffs acknowledge that the result they seek is contrary to *Wilson v.
Cook County*, 937 F.3d 1028 (7th Cir. 2019), and *Friedman v. City of Highland Park*, 784 F.3d
406 (7th Cir. 2015), but Plaintiffs submit those cases were wrongly decided. They therefore
institute this litigation to vindicate their Second Amendment rights and seek to have *Wilson* and
*Friedman* overruled.

**ANSWER:**    County Defendants admit Plaintiffs acknowledge that the result they seek is

contrary to *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019), and *Friedman v. City

of Highland Park*, 784 F.3d 406 (7th Cir. 2015), and Plaintiffs seek to have *Wilson* and

*Friedman* overruled. County Defendants deny those cases were wrongly decided, and

further deny the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

6.        This Court has subject-matter jurisdiction over all claims for relief pursuant to 28
U.S.C. §§ 1331 and 1343.

**ANSWER:** County Defendants admit this Court has subject-matter jurisdiction.

7.        Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C.
§§ 1983 and 1988.

**ANSWER:** County Defendants admit Plaintiffs seek remedies under these provisions, but

denies Plaintiffs are entitled to the requested relief.

8.        Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

**ANSWER:** County Defendants admit that venue lies in this Court.

## PARTIES

9.      Plaintiff Cutberto Viramontes is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Cutberto Viramontes is a member of Plaintiffs SAF and FPC.

> **ANSWER:** County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

10.      Plaintiff Rubi Joyal is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Rubi Joyal is a member of Plaintiffs SAF and FPC.

> **ANSWER:** County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11.      Plaintiff Christopher Khaya is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Christopher Khaya is a member of Plaintiffs SAF and FPC.

> **ANSWER:** County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

12.      Plaintiff Second Amendment Foundation ("SAF") is a 501(c)(3) nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research,

publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members nationwide, including in Cook County. SAF brings this action on behalf of its members, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Cook County.

>    **ANSWER:** County Defendants deny that the semiautomatic arms sought by Plaintiffs are
>    common. County Defendants lack knowledge or information sufficient to form a belief
>    about the truth of the remaining allegations in this paragraph.

13.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Cook County.

>    **ANSWER:** County Defendants deny that the semiautomatic arms sought by Plaintiffs are
>    common. County Defendants lack knowledge or information sufficient to form a belief
>    about the truth of the remaining allegations in this paragraph.

14.    Defendant the County of Cook is a county in the State of Illinois. It is "a body politic and corporate" that "may... be sued." 55 Ill. Comp. Stat. Ann. 5/5-1001. As a county with an elected chief executive officer, it is permitted, under Illinois law, to "(1) exercise any power

and perform any function pertaining to its government and affairs, or (2) exercise those powers within traditional areas of county activity, except as limited by the Illinois Constitution or a proper limiting statute, notwithstanding effects on competition." 55 Ill. Comp. Stat. Ann. 5/2-5016; *see also* Ill. Const. art. VII, § 6. The County has exercised that power to pass its unconstitutional ban on rifles mischaracterized as assault weapons.

> **ANSWER:** County Defendants admit that Cook County is a county in the State of Illinois. County Defendants further admit that the allegations contained in the second and third sentences of this paragraph accurately quote portions of 55 Ill. Comp. Stat. Ann. 5/5-1001 and 5/2-5016. County Defendants further admit that the Cook County Board of Commissioners exercised its powers to approve a ban on assault weapons in Cook County. County Defendants deny the remaining allegations in this paragraph.

15.     Defendant Toni Preckwinkle is President of the Cook County Board of Commissioners and the chief officer of the County. *Office of the President*, Cook County Government, https://bit.ly/2xInmJq (last visited Dec. 31, 2020). As such, she is empowered to approve or veto any ordinance passed by the Board, 55 Ill. Comp. Stat. Ann. 5/2-5010, and obliged to "see that all of the orders, resolutions and regulations of the board are faithfully executed," *id*. 5/2-5009(a). The President approved the County's unconstitutional ban on rifles mischaracterized as assault weapons. *See Cook County Board Bans Assault Weapons, Toughens Penalties,* Cook County Government (July 17, 2013), https://bit.ly/380I1Ut.

> **ANSWER:** County Defendants admit that Toni Preckwinkle is President of the Cook County Board of Commissioners and the chief officer of the County. County Defendants further admit that the allegations contained in the second sentence of this paragraph

accurately quote portions of 55 Ill. Comp. Stat. Ann. 5/2-5010 and 5/2-5009(a). County Defendants deny the remaining allegations in this paragraph.

16.     Defendant Kimberly M. Foxx is the State's Attorney for Cook County, Illinois. In such capacity, Foxx enforces the County's ordinances, including its unconstitutional ban on rifles mischaracterized as assault weapons. *See* 55 Ill. Comp. Stat. Ann. 5/3-9005. Foxx's ongoing enforcement of the "assault weapons" ban against Cook County residents places Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya under imminent threat of prosecution should they violate the ban, which leaves them unable to keep common firearms. All similarly situated members of SAF and FPC in Cook County face the same clear threat of enforcement.

> **ANSWER:** County Defendants admit that Kimberly M. Foxx is the State's Attorney for Cook County, Illinois. County Defendants further admit that the State's Attorney has the statutory and constitutional duty to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, within Cook County. County Defendants deny the remaining allegations in this paragraph.

17.     Defendant Thomas Dart is the Sheriff of Cook County, Illinois. In such capacity, Dart enforces the County's ordinances, including its unconstitutional ban on rifles mischaracterized as assault weapons. *See* 55 Ill. Comp. Stat. Ann. 5/3-6019; Code of Ordinances of Cook Cnty., Ill. §§ 54-212(b)-(c), 54-213 (Dec. 15, 2020), https://bit.ly/2Lcts75. Dart's ongoing enforcement of the "assault weapons" ban against Cook County residents places Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya under imminent threat of arrest and suffering confiscation should they violate the ban, which leaves them unable to keep common firearms. All similarly situated members of SAF and FPC in Cook County face the same clear threat of enforcement.

**ANSWER:** County Defendants admit that Thomas Dart is the Sheriff of Cook County, Illinois. County Defendants further admit that the Sheriff has the statutory and constitutional duties as outlined in 55 Ill. Comp. Stat. Ann. 5/3-6019. County Defendants deny the remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

## I.      COOK COUNTY'S UNCONSTITUTIONAL ORDINANCE

18.     In November 2006, the Cook County Board of Commissioners enacted, and in July 2013 they revised, the Blair Holt Assault Weapons Ban ("the Ordinance").

**ANSWER:** County Defendants admit that amendments to the Blair Holt Assault Weapons Ban ("the Ordinance") were made in July 2013 and various ordinances pertaining to the same subject matter were adopted prior to 2013. County Defendants deny the remaining allegations in this paragraph.

19.     In current form, the Ordinance labels many firearms in common use "assault weapons[s]" and criminalizes any act to "manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire, carry or possess" such firearms in Cook County. Code of Ordinances of Cook Cnty., Ill. §§ 54-211, 54-212(a) (Dec. 15, 2020), https://bit.ly/2Lcts75.

**ANSWER:** County Defendants admit that the Ordinance defines "assault weapon" and makes it unlawful to manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire, carry or possess any assault weapon or large capacity magazine in Cook County, except the sale or transfer to, or possession by individuals permitted by the Cook County Ordinance, and except the transportation of these weapons if they are broken down and in a nonfunctioning state and are not immediately accessible to any person.

8

County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

20.     This criminal prohibition "appl[ies] to all persons in Cook County," excepting only an "officer, agent, or employee of Cook County or any other municipality or state or of the United States, members of the armed forces of the United States; or the organized militia of this or any other state; or peace officers to the extent that any such person named in this subsection is otherwise authorized… and does so while acting in the scope of his or her duties." *Id*. §§ 54-210, 54-212(a)(1).[1]

   **ANSWER:** County Defendants admit that the allegations contained in this paragraph and footnote accurately quote provisions of the Ordinance. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

21.     Any ordinary person in Cook County who legally possessed a so-called "assault weapon" before enactment must, under the Ordinance, remove it from county limits, modify it to render it permanently inoperable, or surrender it to the Sheriff. *Id*. § 54-212(c).

   **ANSWER:** County Defendants admit that any person described in the Ordinance who legally possessed an assault weapon or large capacity magazine prior to the effective date of the ordinance codified in Section 54-212(c), had 60 days from the effective date of the ordinance to remove it from county limits, modify it to render it permanently inoperable, or surrender it to the Sheriff or his designee. County Defendants refer to the entire

---

[1] The ban does not apply either to "[t]ransportation of assault weapons… if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person." *Id.* §§ 54-212(1)(2).

Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

22.     The Ordinance declares "assault weapons[s]" to be "contraband"; it requires the Sheriff to seize such firearms and, if he ascertains that they are not "needed as evidence in any matter," to destroy them. *Id* §§ 54-212(b), 54-213.

**ANSWER:** County Defendants admit that Section 54-212(b) provides that "[a]ny assault weapon or large capacity magazine possessed, carried, sold or transferred in violation of Subsection (a) of this section is hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 54-213." County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

23.     A first-time violation of the Ordinance is a crime punishable by a $10,000 fine and six months in prison. *Id*. §§ 54-214(a).

**ANSWER:** County Defendants admit that any person found in violation of the Ordinance will be fined not less than $5,000.00 and not more than $10,000.00 and may be sentenced for a term not to exceed more than six months imprisonment. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

## II.     THE ORDINANCE BANS RIFLES IN COMMON USE

24.     The Ordinance bans as an "assault weapon" any semiautomatic rifle with a capacity to accept a magazine holding more than ten rounds of ammunition, if it has any of the following features:

(A) Only a pistol grip without a stock attached;
(B) Any feature capable of functioning as protruding grip that can be held by the non-trigger hand;
(C) A folding, telescoping or thumbhole stock;
(D) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or
(E) A muzzle brake or muzzle compensator.

*Id.* § 54-211, *Assault weapon* ¶ (1); *see also id., Large-capacity magazine.*

**ANSWER:** County Defendants admit that the allegations contained in this paragraph accurately describe provisions of the Ordinance. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

25.    Further, the Ordinance bans any "[c]onversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person." *Id.* ¶ (6).

**ANSWER:** County Defendants admit that the allegations contained in this paragraph accurately quote a provision of the Ordinance. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

26.    Finally, the Ordinance lists these specific examples of banned "assault weapons models":

(A) The following rifles or copies or duplicates thereof:

(i)    AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR, Rock River Arms LAR-47, Vector Arms AK-47, VEPR, WASR-10, WUM, MAADI, Norinco 56S, 56S2, 84S, and 86S;
(ii)   AR-10;
(iii)  AR-15, Bushmaster XM15, Bushmaster Carbon 15, Bushmaster ACR, Bushmaster MOE series, Armalite M15, Armalite M15-T and Olympic Arms PCR;
(iv)   AR70;

(v)     Calico Liberty;

(vi)    Dragunov SVD Sniper Rifle or Dragunov SVU;

(vii)   Fabrique National FN/FAL, FN/LAR, or FNC;

(viii)  Hi-Point Carbine;

(ix)    HK-91, HK-93, HK-94, HK-USC and HK-PSG-1;

(x)     Kel-Tec Sub Rifle, Kel-Tec Sub-2000, Su-16, and RFB;

(xi)    Saiga;

(xii)   SAR-8, SAR-4800;

(xiii)  KS with detachable magazine;

(xiv)  SLG 95;

(xv)   SLR 95 or 96;

(xvi)  Steyr AUG;

(xvii) Sturm, Ruger Mini-14, and Sturm, Ruger & Co. SR556;

(xviii) Tavor;

(xix)  All Thompson rifles, including Thompson 1927, Thompson M1, Thompson M1SB, Thompson T1100D, Thompson T150D, Thompson T1B, Thompson T1B100D, Thompson T1B50D, Thompson T1BSB, Thompson T1-C, Thompson T1D, Thompson T1SB, Thompson T5, Thompson T5100D, Thompson TM1, Thompson TM1C, and Thompson 1927 Commando;

(xx)   Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz);

(xxi)  Barrett REC7, Barrett M82A1, Barrett M107A1;

(xxii) Colt Match Target Rifles;

(xxiii) Double Star AR Rifles;

(xxiv) DPMS Tactical Rifles;

(xxv) Heckler & Koch MR556;

(xxvi) Remington R-15 Rifles;

(xxvii) Rock River Arms LAR-15;

(xxviii)Sig Sauer SIG516 Rifles, SIG AMT, SIG PE 57, Sig Saucer SG 550, and Sig Saucer SG 551;

(xxix) Smith & Wesson M&P15;

(xxx)  Stag Arms AR;

(xxxi) Baretta CX4 Storm;

(xxxii) CETME Sporter;

(xxxiii)Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 110C;

(xxxiv)Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000;

(xxxv) Feather Industries AT-9;

(xxxvi)Galil Model AR and Model ARM;

(xxxvii)    Springfield Armory SAR-48;

(xxxviii)   Steyr AUG;

(xxxix)UMAREX UZI Rifle;

(xl)     UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine;

(xli)    Valmet M62S, M71s, and M78;

(xlii)  Vector Arms UZI Type;

(xliii) Weaver Arms Nighthawk; and

(xliv)  Wilkinson Arms Linda Carbine

*Id.* ¶ (7).

**ANSWER:** County Defendants admit that the allegations contained in this paragraph accurately quote Section 54-211(7)(A) of the Ordinance. County Defendants refer to the entire Ordinance for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

27.     Semiautomatic rifles "traditionally have been widely accepted as lawful possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and they too are in common use presently, *see Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles… are indeed in 'common use' as the plaintiffs contend.") Indeed, counting just "modern sporting rifles" (a category that includes semiautomatic AR-style and AK-style rifles), the number in circulation today approaches (and may exceed) twenty million. Indeed, a recent survey of gun owners indicates that about 24.6 million Americans have owned an AR-15 or similar rifle. *See* William English, 2021 National Firearms Survey at 1, https://bit.ly/3rYa13k. According to industry sources, more than one out of every five firearms sold in certain recent years were semiautomatic modern sporting rifles.

**ANSWER:** County Defendants admit that the allegations contained in the first sentence of this paragraph quote, in part, from the opinions rendered in *Staples and Heller II*. County Defendants refer to the entire opinions rendered in *Staples and Heller II* for their full meaning and effect. County Defendants deny that semiautomatic rifles are in common use. Further, County Defendant deny the remaining allegations in this paragraph.

28.     The banned semiautomatic rifles, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *See Staples*, 511 U.S. at 602

13

n.1. What is more, the designation "assault weapons" is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v. Carhart,* 530 U.S. 914, 1001 n. 16 (2000) (Thomas, J., dissenting).

> **ANSWER:** County Defendants refer to the entire opinions rendered in *Staples and Stenberg* for their full meaning and effect. County Defendants deny the allegations in this paragraph.

29.     Rifles built on an AR-style platform are a paradigmatic example of the type of arm Cook County bans. AR-15 rifles, for example, are among the most popular firearms in the nation, and they are owned by millions of Americans.

> **ANSWER:** County Defendants deny the allegations in this paragraph.

30.     Central among the common uses of rifles banned in Cook County is defense of self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risk to unintended targets in the home. An AR-15 rifle chambered for 5.56x45mm NATO ammunition is an optimal firearm to rely on in a self-defense encounter.

> **ANSWER:** County Defendants deny the allegations in this paragraph.

31.     Like the AR-15 generally, the specific features banned by the Ordinance aid home defense. Folding, telescoping, and thumbhole stocks[2] reduce length- or weight-based obstacles to maneuverability without sacrificing the stability and thus accuracy that stocks may provide. *See* David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 398-99 (1994).

**ANSWER:** County Defendants deny the allegations in this paragraph and footnote.

32.     Muzzle brakes or compensators, thumbhole stocks, and protruding grips for non-trigger hands all reduce the "kick" or recoil in discharging a rifle and thereby enhances accurate fire (in particular for individual of smaller stature, including, of course, many women).

**ANSWER:** County Defendants deny the allegations in this paragraph.

33.     Absent, folding, and telescoping stocks also increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces.

**ANSWER:** County Defendants deny the allegations in this paragraph.

34.     Most common semiautomatic rifles, including those banned under the Ordinance, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters to reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to safely and quickly remedy malfunctions.

**ANSWER:** County Defendants deny the allegations in this paragraph.

35.     Encounters with criminal intruders in the home are not uncommon. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household

---

[2] A folding stock, of course, folds toward the rest of the firearm. A telescoping stock allows the length of the stock to be shortened or lengthened, consistent with the length of a person's arms. A thumbhole stock is partially carved out, reducing its weight and allowing the stock-holding thumb greater control over the weapon.

members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. of Crim. L. & Criminology 150, 164 (1995).

**ANSWER:** County Defendants deny the allegations in this paragraph.

36. Other common, lawful uses of the banned rifles are hunting and sport. At least a third of all gun-owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning a modern sporting rifle.

**ANSWER:** County Defendants deny the allegations in this paragraph.

37. Here again, the banned features of rifles mischaracterized as assault weapons serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks, as well as thumbhole stocks, also ease carrying over long distances while hunting. Detachable magazines have the same benefits in the hunting and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. Muzzle brakes or compensators, thumbhole stocks, and protruding grips for non-trigger hands open hunting and sport-shooting to those for who recoil represents a high barrier to entry. Lastly, a "shroud attached to the barrel… allow[s] the bearer to hold the firearm with the non-trigger hand without being burned," a safe-enhancing feature that the Ordinance admits even while banning it. *Id.* § 54-211, *Assault weapon* ¶¶ (1), (3), (4).

**ANSWER:** County Defendants deny the allegations in this paragraph.

16

38.     By contrast, one use that is not common for so-called "assault rifles" is crime. According to a widely cited 2004 study, these arms "are used in small fraction of gun crimes." This has long been true. *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'"). Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.), and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (FBI 2019), https://bit.ly/3lHABwE.

**ANSWER:** County Defendants deny the allegations in this paragraph.

39.     The Ordinance's ban on acquiring, purchasing, receiving, transporting, possessing, and lawfully using an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic rifles that are commonly and overwhelmingly possessed and used for lawful purposes, including self-defense in the home.

**ANSWER:** County Defendants deny the allegations in this paragraph.

## III.    THE EFFECT ON PLAINTIFFS

40.     Plaintiff Cutberto Viramontes lives in Chicago in Cook County. Viramontes intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly a Smith and Wesson M&P rifle, for lawful purposes, especially for self-defense. The Smith and Wesson M&P is an AR-15 style rifle that is explicitly identified as illegal in the Ordinance. Viramontes would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Viramontes continues to refrain from acquiring,

purchasing, receiving, transporting, possessing, or lawfully using an M&P AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

> **ANSWER:** County Defendants admit that the Ordinance lists Smith and Wesson M&P15 as one of the banned assault weapons. County Defendants deny that the arms sought by Plaintiff are common. County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

41.     Plaintiff Rubi Joyal lives in Chicago in Cook County. Joyal intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly a Smith and Wesson M&P, for lawful purposes, especially for self-defense. The Smith and Wesson M&P is an AR-15 style rifle that is explicitly identified as illegal in the Ordinance. Joyal would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Joyal continues to refrain from acquiring, purchasing, receiving, transporting, possessing, or lawfully using an M&P AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

> **ANSWER:** County Defendants admit that the Ordinance lists Smith and Wesson M&P15 as one of the banned assault weapons. County Defendants deny that the arms sought by Plaintiff are common. County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

42.     Plaintiff Christopher Khaya lives in Chicago in Cook County. Khaya intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly an IMI Galil rifle, for lawful purposes, especially for self-defense. The IMI Galil is an AR-15 styled semi-

automatic rifle that is explicitly identified as illegal in the Ordinance. Khaya would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Khaya continues to refrain from acquiring, purchasing, receiving, transporting, possessing, or lawfully using an IMI Galil rifle or any similar firearm, for self-defense and other lawful purposes.

> **ANSWER:** County Defendants admit that the Ordinance lists Galil Model AR as one of the banned assault weapons. County Defendants deny that the arms sought by Plaintiff are common. County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

43.     Members of Plaintiffs SAF and FPC intend and desire to acquire, purchase, receive, transport, possess, or lawfully use semiautomatic rifles banned by the challenged provisions, and are subject to and adversely affected by the restrictions articulated in this complaint on "assault weapons."

> **ANSWER:** County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

44.     But for the enactment and enforcement of the Ordinance, these members would forthwith obtain and possess such rifles, but cannot do so because they are considered "assault weapons."

> **ANSWER:** County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

45.     But for Defendants' enactment and enforcement of an unconstitutional Ordinance, and Defendants' enforcement thereof, and the criminal penalties associated with violations of the Ordinance, members of Plaintiffs SAF or FPC, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution for engaging in constitutionally protected, lawful conduct.

> **ANSWER:** County Defendants deny that the Ordinance is unconstitutional. County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

## IV.    DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

46.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

> **ANSWER:** County Defendants admit the allegations in this paragraph accurately quote the Second Amendment to the United States Constitution.

47.     The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

> **ANSWER:** County Defendants admit the allegations in this paragraph accurately quote, in part, the Fourteenth Amendment to the United States Constitution.

48.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago,* 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

> **ANSWER:** County Defendants admit that the Second Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment.

49.     "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

> **ANSWER:** County Defendants admit that the allegation contained in this paragraph quotes, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

50.     "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634-35.

> **ANSWER:** County Defendants admit that the allegation contained in this paragraph quotes, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

51.     At the same time, indeed for this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search,

the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. at 582 (citations omitted).

> **ANSWER:** County Defendants admit that the allegation contained in this paragraph quotes, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

52.    The rifles at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in militia duty, should such be necessary. As the Southern District of California recently explained in finding California's "assault weapons" ban unconstitutional, "the AR-15 rifle is the perfect combination of home defense weapon and homeland defense equipment." *Miller v. Bonta,* 2021 WL 2284132 (S.D. Cal. June 4, 2021).

> **ANSWER:** County Defendants admit that the allegations contained in the third sentence of this paragraph quote, in part, from the opinion rendered in *Miller*, which is currently pending appeal. County Defendants refer to the entire opinion rendered in *Miller* for its full meaning and effect. County Defendants deny the allegations in this paragraph or the applicability of the *Miller* opinion to this dispute.

53.    In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id*. at 592.

> **ANSWER:** County Defendants admit that the allegations contained in this paragraph quote, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

54.     This is "'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights.'" *Id*. at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769).

**ANSWER:** County Defendants admit that the allegations contained in this paragraph quote, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

55.     When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g., Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the enactment and enforcement of the Ordinance.

**ANSWER:** County Defendants deny the allegations in this paragraph.

56.     Further, the Second Amendment protects "arms… of the kind in common use… for lawful purposes like self-defense." *Heller*, 554 U.S. at 624 (quotation marks and citation omitted).

**ANSWER:** County Defendants admit that the allegations contained in this paragraph quote, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

57.     Assuming ordinary citizens are not disqualified from exercising Second Amendment rights, the State must permit them to keep and bear common rifles for lawful purposes.

**ANSWER:** County Defendants admit that citizens not disqualified from exercising Second Amendment rights are permitted to keep and bear Arms as granted by the Second

Amendment subject to appropriate regulation and restriction. County Defendants deny the remaining allegations in this paragraph.

58.     The right to keep and bear common rifles guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

**ANSWER:** County Defendants deny the allegations in this paragraph.

59.     The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Id.* at 636.

**ANSWER:** County Defendants admit that the allegations contained in this paragraph quote, in part, from the opinion rendered in *Heller*. County Defendants refer to the entire opinion rendered in *Heller* for its full meaning and effect. County Defendants deny the remaining allegations in this paragraph.

60.     Yet, this is precisely how the Ordinance in Cook County operates, completely shutting out ordinary, law-abiding citizens from exercising their rights in the County.

**ANSWER:** County Defendants deny the allegations in this paragraph.

<u>**COUNT ONE**</u>

**42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution**

61.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** County Defendants incorporate by reference their responses to the previous paragraphs as if fully set forth herein.

24

62.     There is an actual and present controversy between the parties.

**ANSWER:** County Defendants deny the allegations in this paragraph.

63.     The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms, both in the home and in public.

> **ANSWER:** County Defendants admit that citizens not disqualified from exercising Second Amendment rights are permitted to keep and bear Arms as granted by the Second and Fourteenth Amendments to the United States Constitution. County Defendants deny the remaining allegations in this paragraph.

64.     The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

> **ANSWER:** County Defendants admit that the keeping and bearing of arms is a right protected by the Second Amendment. County Defendants deny the remaining allegations in this paragraph.

65.     The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, purchase, receive, transport, possess, and lawfully use common rifles for all lawful purposes, including self-defense.

> **ANSWER:** County Defendants deny the allegations in this paragraph.

66.     Under paragraphs 1 and 3 through 6 of the "Assault weapon" definition in section 54-211 of the Code of Ordinances of Cook County, Illinois, in combination with sections 54-210 and 54-212 through 54-214 of the same, the County bans rifles that are commonly used for lawful

25

purposes, grounding this ban on features that do not make a firearm more powerful or dangerous. No adequate basis exists for such a ban.

> **ANSWER:** County Defendants admit that the Ordinance provides a list of assault weapons that are banned. County Defendants deny the remaining allegations in this paragraph.

67.     Also banned under sections 54-210 and 54-212 through 54-214 are semiautomatic rifles permitted under federal law but listed in paragraph 7 of the "Assault weapon" definition in section 54-211. No adequate basis exists to restrict such firearms, which fire only once per trigger pull, like all other semiautomatic firearms.

> **ANSWER:** County Defendants admit that the Ordinance provides a list of semiautomatic rifles that are banned. County Defendants deny the remaining allegations in this paragraph.

68.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

> **ANSWER:** County Defendants admit that 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law, but denies that Defendants deprived individuals of their federal constitutional rights.

69.     Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in the County of Cook, including Plaintiffs Cutberto Viramontes, Rubi Joyal, Christopher Khaya, and all similarly situated members of Plaintiffs SAF or FPC through enactment and enforcement of the Ordinance.

> **ANSWER:** County Defendants deny the allegations in this paragraph.

70. For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

**ANSWER:** County Defendants deny the allegations in this paragraph.

## GENERAL DENIAL

All allegations that have not been specifically admitted are hereby denied. Furthermore, County Defendants deny that Plaintiffs are entitled to the relief sought.

## FIRST AFFIRMATIVE DEFENSE

For its first affirmative defense, County Defendants allege that the Complaint fails to state a cause of action upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

For its second affirmative defense, County Defendants allege that Plaintiffs Second Amendment Foundation and Firearms Policy Coalition, Inc., may lack standing.

**WHEREFORE**, County Defendants respectfully request that judgment be entered in favor of Defendants and against Plaintiffs, Plaintiffs' requests for injunctive and declaratory relief and award of damages, fees, and costs by denied, costs be assessed against Plaintiffs, and any other and further relief this Honorable Court deems necessary and appropriate be granted.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By:    */s/ Hellin Jang*
Hellin Jang
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
hellin.jang@cookcountyil.gov
(312) 603-5397

Jessica Scheller
Prathima Yeddanapudi
Hellin Jang
Nicolette Koutas
Assistant State's Attorneys
Cook County State's Attorney's Office
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, Illinois 60602
Attorney No. 10295