IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CUTBERTO VIRAMONTES, et al. : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 1:21-cv-04595 |
| vs. : | |
| : | Chief Judge Rebecca R. Pallmeyer |
| THE COUNTY OF COOK, et al. : | |
| : | |
| Defendants. : | |

**PLAINTIFFS' BRIEF IN SUPPORT OF JUDGMENT ON THE PLEADINGS**

Based on currently binding precedent, this Court can and should enter final judgment in this case immediately. As Plaintiffs acknowledged in their Complaint, Compl. ¶ 5, Doc. 1 (Aug. 27, 2021) and as Defendants admit in their Answer, Cnty. Defs.' Answer to Pls.' Compl. ¶ 5, Doc. 17 (Nov. 15, 2021) ("Answer"), the claims at issue in this case are foreclosed by *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019) and *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015). All parties agree that the Court is bound by these decisions and as such, no discovery or further proceedings in this Court could change the outcome of this suit. Plaintiffs therefore move for judgment on the pleadings. However, because Plaintiffs claims are presently foreclosed by *Wilson* and *Friedman*, Plaintiffs concede that this Court should deny their Motion and, instead, grant judgment on the pleadings *to Defendants*, as Defendants suggested was proper in their Answer.

**I.** ***Wilson*** **and** ***Friedman*** **Were Wrongly Decided.**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court has held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that

1

were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008); *see Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016). This right applies equally against the states. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The County bears the burden of showing that a particular type of bearable arm falls outside of this protection. *See Ezell v. City of Chicago*, 651 F.3d 684, 702–03 (7th Cir. 2011).

To meet this burden, the County must show that an arm is "not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; *see also id.* at 627 (arms "highly unusual in society at large" are not protected). Conversely, if a firearm is commonly possessed by law-abiding Americans for lawful purposes, the County cannot second-guess that choice and outlaw that firearm. *See id.* at 629 ("Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid."); *Caetano*, 577 U.S. at 420 (Alito, J., concurring).

The class of common semiautomatic rifles that are banned by Cook County—tendentiously labeled "assault weapons"—are among the most commonly possessed firearms in America today. *See Staples v. United States*, 511 U.S. 600, 612 (1994) (noting AR-15 rifles "traditionally have been widely accepted as lawful possessions"); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use' as the plaintiffs contend.") Indeed, a recent survey of gun owners suggests that about 24.6 million Americans have owned an AR-15 or similar rifle. *See* William English, *2021 National Firearms Survey* at 1, Geo. Univ. (July 13, 2021), https://bit.ly/3rYa13k. Under a straightforward application of *Heller*, "assault weapons" may not be banned.

2

Yet, as Plaintiffs recognize, the Seventh Circuit has twice held that they may. In *Friedman*, the court considered a materially identical ban to the one at issue here and upheld it. In so doing, *Friedman* made several errors in assessing whether "assault weapons" are protected arms. First, the Seventh Circuit asked "whether [the challenged] regulation bans weapons that were common at the time of ratification," 784 F.3d at 410, but *Heller* rejected the argument "that only those arms in existence in the 18th century are protected by the Second Amendment" as "bordering on the frivolous," 554 U.S. at 582. The question "is whether [a firearm is] commonly possessed by law-abiding citizens for lawful purposes *today*." *Caetano*, 577 U.S. at 420 (Alito, J., concurring) (emphasis in original). Second, the Seventh Circuit asked whether the banned firearms had "some reasonable relationship to the preservation or efficiency of a well regulated militia." 784 F.3d at 410 (quotation marks omitted). This is also inconsistent with *Heller*, which stated that the Amendment protects "an individual right *unconnected* with militia service." 554 U.S. at 582 (emphasis added). Indeed, the Seventh Circuit's own opinion undercut any plausible justification for this rationale by noting that, in fact, "[s]ome of the weapons prohibited by the ordinance *are* commonly used for military and police functions [and] therefore bear a relation to the preservation and effectiveness of state militias," but concluding "states, which are in charge of militias, should be allowed to decide when civilians can possess military-grade firearms." 784 F.3d at 410–11. Finally, the Seventh Circuit asked "whether law-abiding citizens retain adequate means of self-defense" despite the ban. *Id.* at 410. But *Heller* rejected this way of thinking as well. There, the District of Columbia argued "that it is permissible to ban the possession of handguns so long as the possession of other firearms . . . is allowed" but the Court considered this line of argument "no answer" to the law-abiding "American people [who] have considered the handgun to be the

quintessential self-defense weapon." 554 U.S. at 629. The same is true of the firearms that Cook County has taken on itself to outlaw.

*Friedman* is enough to resolve this case, but any doubt is dispelled by *Wilson*. There, the Seventh Circuit considered a challenge to Cook County's assault weapons ban—the same ban at issue here—and found it controlled by *Friedman*. Indeed, the Court specifically determined that the district court was correct to grant a motion to dismiss and deny "plaintiffs an opportunity to develop a factual record on which to distinguish *Friedman*," because "[t]he result in *Friedman* did not turn on any factual findings unique to Highland Park" but was instead driven by analysis of "national statistic[s]," "general evidence of the features of semi-automatic guns" and crime trends beyond the scope of Highland Park. 937 F.3d at 1034, 1036. In fact, the only analysis specific to Highland Park was analysis of the *ordinance*, but even that was unnecessary the second time around, given that the new ordinance was "materially indistinguishable." *Id.* at 1029, 1034. The law at issue here not only is materially indistinguishable from the law at issue in *Wilson* but is in fact the same law.

## II. Both Sides Agree Judgment on the Pleadings Is Proper.

This Court is bound by *Friedman* and *Wilson* and cannot give Plaintiffs the relief they seek. Nevertheless, it should enter judgment on the pleadings on the basis of Plaintiffs' Complaint and Defendants' Answer. As *Wilson* makes clear, challenges to laws like those at issue here are not dependent on specific facts. Rather this challenge, like many other Second Amendment lawsuits, turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of parties in a particular case." *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). The few specific facts necessary to adjudicate this dispute—that the challenged ordinances are in place and are enforced by the Defendants—are admitted in the Answer. Nothing else that could be added to the record could have the slightest influence on the outcome of this

suit, either in this Court or on appeal, and there is no reason to drag out this proceeding any further. The Court should enter judgment on the pleadings against Plaintiffs.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) . . . is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

Defendants have already taken the position that Plaintiffs' Complaint should be dismissed. Their Answer states: "[T]he Complaint fails to state a cause of action upon which relief may be granted." Answer at 27. Plaintiffs therefore request that the Court accept Defendants' unequivocal assertion and promptly enter judgment on the pleadings in Defendants' favor, as (presently) controlling precedent requires this Court to do. Given the parties' agreement that this outcome is inevitable, there is no reason to delay judgment or allow Defendants an opportunity to build a record that will be wholly irrelevant to the outcome of the proceedings before this Court. Such delay serves no purpose other than to waste the Court's time and imposes irreparable harm on Plaintiffs by needlessly extending the alleged deprivation of their Second Amendment rights. *See Ezell v. City of Chicago*, 651 F.3d at 699 (finding "[the] very existence" of the challenged statute "stands as a fixed harm to every Chicagoan's Second Amendment right"); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.) (holding loss of constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury"). Again, all agree that this Court is bound to enter judgment against Plaintiffs; the only purpose delaying the inevitable can serve, therefore, is to extend the time before Plaintiffs will have an opportunity to seek to have binding adverse precedent overturned.

To be sure, Defendants may argue on appeal that if the adverse precedent Plaintiffs are challenging is overturned the case should then be remanded for further factual development under correct legal standards. While Plaintiffs disagree that would be necessary, Defendants will be free to press that argument. What Defendants cannot contest is that no factual development is needed to resolve this case at this stage of the litigation under currently binding precedent.

It makes no difference that Defendants styled their contention that Plaintiffs' Complaint fails to state a claim as an "affirmative defense" rather than filing a formal motion for judgment on the pleadings or to dismiss. This Court has "ample authority" to "spontaneously" enter judgment on the pleadings on Plaintiffs' currently foreclosed suit without waiting for a formal motion from Defendants "and thus save everyone time and legal expense." *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *see* 5B WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1357 (3d ed.) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."); *Van Tu v. Koster*, 364 F.3d 1196, 1200 (10th Cir. 2004) ("Any party may move for judgment on the pleadings, or the court may act sua sponte." (*quoting* 2 MOORE, ET AL., MOORE'S FED. PRAC. § 12.38 & n.3 (3d ed. 2003))).

In sum, the Court currently has everything it needs to issue a final judgment in this case and nothing that could be produced in discovery or further litigation before this Court will change the outcome. Expedient entry of judgment on the pleadings would conserve this Court's and the litigants' resources, allow Plaintiffs to make their claims in a forum with the authority to vindicate them, and minimize the ongoing harm suffered by Plaintiffs every day this proceeding is prolonged.

## **CONCLUSION**

For the foregoing reasons, in light of *Friedman* and *Wilson*, the Court should deny Plaintiffs' motion for judgment on the pleadings and enter judgment in favor of Defendants.

Dated: December 3, 2021

Christian D. Ambler
ARDC #6228749
STONE & JOHNSON, CHTD.
111 West Washington St., Suite 1800
Chicago, IL 60602
(312) 332-5656
cambler@stonejohnsonlaw.com

Respectfully Submitted,

/s/ David H. Thompson
David H. Thompson\*
Peter A. Patterson\*
William V. Bergstrom\*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

\*Admitted p*ro hac vice*

*Attorneys for Plaintiffs*