```
                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION


   CUTBERTO VIRAMONTES, et al.,  )
                                 )
               Plaintiffs,       )   Docket No. 21 C 4595
                                 )
           vs.                   )
                                 )
   THE COUNTY OF COOK, et al.,   )   Chicago, Illinois
                                 )   December 8, 2021
               Defendants.       )   11:15 a.m.


                TRANSCRIPT OF PROCEEDINGS - Status
       BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER

   APPEARANCES:

   For the Plaintiffs:        COOPER & KIRK, PLLC
                              BY:  MR. PETER A. PATTERSON
                                   MR. WILLIAM V. BERGSTROM
                              1523 New Hampshire Avenue NW
                              Washington, DC, 20036

   For the Defendants:        HON. KIMBERLY M. FOXX
                              STATE'S ATTORNEY OF COOK COUNTY
                              BY:  MS. JESSICA M. SCHELLER
                                   MS. HELLIM JANG
                                   MS. PRATHIMA YEDDANAPUDI
                              500 Richard J. Daley Center
                              Chicago, Illinois   60602




   Court Reporter:            FRANCES WARD, CSR, RPR, RMR, FCRR
                              Official Court Reporter
                              219 S. Dearborn Street, Suite 2524A
                              Chicago, Illinois   60604
                              (312) 435-5561
                              frances_ward@ilnd.uscourts.gov
```

1      (The following proceedings were had telephonically:)
2      THE CLERK: 21 C 4595, Viramontes, et al. versus
3 the County of Cook, et al.
4      THE COURT: Okay. Good morning.
5      Let me get your appearances for the record. We
6 will begin with the plaintiff. Counsel for plaintiff, if you
7 would introduce yourselves.
8      MR. PATTERSON: Yes. This is Pete Patterson from
9 Cooper & Kirk. My colleague Will Bergstrom is on as well.
10      THE COURT: And for defendant.
11      MS. SCHELLER: Good morning, your Honor.
12      Assistant State's Attorneys Jessica Scheller,
13 Prathima Yeddanapudi, and Hellin Jang for the defendants.
14      THE COURT: Okay. Good morning.
15      I have read the submissions, and I understand it's
16 the plaintiffs' position that this case really is one where
17 the Court should immediately enter judgment against the
18 plaintiff and take -- allow them to take the case upstairs to
19 the Court of Appeals with the expectation that there are no
20 facts or discovery that would militate against a finding in
21 favor of the defendants as the law stands today.
22      Is that your understanding? It's the expectation
23 of the plaintiffs that they would like to get the matter
24 before the Court of Appeals because they believe that the
25 Court of Appeals may want to change its mind, and they

1  recognize that I am not in a position to do that for them?
2  MR. PATTERSON: Yes, your Honor. This is Pete
3  Patterson for the plaintiffs. That's exactly right.
4  And if I could make one more point in addition to
5  what we have put in our brief, your Honor may be familiar
6  with the *New York State Rifle & Pistol Association* case
7  currently before the United States Supreme Court. A similar
8  thing happened in that case as to what we believe should
9  happen in this case where the plaintiffs filed the lawsuit.
10  It was controlled by Second Circuit precedent. There was an
11  immediate motion to dismiss in that case, and the plaintiffs
12  acknowledged it should be entered.
13  Same thing happened in the Second Circuit. And
14  then they filed a cert petition, and the Supreme Court
15  granted it. And there have been dozens of amicus briefs on
16  both sides. The Supreme Court essentially has all the
17  information it needs to decide the case, although the State
18  in that case has said to the Supreme Court: If you are going
19  to rule against us on the legal principles, you should remand
20  to build more of a record. And the plaintiffs in that case
21  disagree.
22  But if we do get up and the Seventh Circuit decides
23  to change its mind on the legal principles or the U.S.
24  Supreme Court were to decide to take this case, you know, at
25  that point there might be a dispute amongst the parties as to

1   whether this needs to go back down for more fact development.
2   We likely would say it wouldn't. The State may say it does.
3            But at this point, unless and until that precedent
4   changes, it really -- there really is no reason to do
5   anything in the district court.
6            And in *Wilson*, the plaintiffs were saying there
7   needed to be more fact discovery, and the Seventh Circuit
8   rejected that. There is no need to do anything different
9   since it's the defendant that's saying there needs to be more
10  discovery.
11           So thank you for your indulgence, your Honor. I
12  just wanted to make those few points.
13           THE COURT: Okay. Can I hear from Cook County or
14  the defendants on your views on this whole issue about
15  whether or not the Court should simply enter judgment in your
16  favor.
17           MS. SCHELLER: Yes, your Honor. Thank you.
18  Jessica Scheller appearing on behalf of the defendant.
19           We've discussed this with plaintiffs' counsel. And
20  I think it can reduced to a very fine point arising out of
21  the precedent upon which we have relied in *Wilson* and which
22  we believe supports our regulation when you go back to the
23  *Friedman v. Highland Park* case, and that is, in *Friedman v.*
24  *Highland Park*, the Seventh Circuit noted that the defendants
25  had not developed a record as to whether or not this

1  particular class of weapon as regulated was dangerous and
2  unusual.
3      We do intend to develop such a record. We do think
4  that that would be an additional basis pursuant to which we
5  could potentially win on the merits. And we think we should
6  be entitled to engage in discovery and develop a record as to
7  those facts given that plaintiff has slated them and we have
8  denied them.
9      So I think that there is room within the current
10  legal framework for discovery on the issue of whether or not
11  assault weapons and large capacity magazines are dangerous
12  and unusual; therefore, not qualifying for Second Amendment
13  protection. That is the basis pursuant to which we would
14  like to conduct discovery. And we do think that the law
15  supports us on this point.
16      THE COURT: Let me presume that the law does
17  support you on this point, that these are dangerous weapons
18  and that provides us a second basis for judgment in your
19  favor. Is there a reason that this court should develop that
20  record now given that you, under the current state of the
21  law, are entitled to judgment even without such a showing?
22      MS. SCHELLER: Yes, your Honor. We believe that it
23  is better to litigate cases wholly and fully in the district
24  court and not to engage in piecemeal litigation and appellate
25  review, which is a strategy that is disfavored by the Seventh

1  Circuit and presumptively also by the Supreme Court as well.
2  	There are several issues which we do not believe we
3  need to conduct discovery on.  We do believe the law supports
4  them, and we are glad plaintiffs concede them.
5  	But whether or not the law recognizes and we can
6  develop a factual record that these weapons and large
7  capacity magazines are dangerous and unusual is in the area
8  that the Seventh Circuit has not spoken on.  And we think as
9  the defendants in this case, we should be permitted to
10 develop every defense available to us under the law so long
11 as we are acting in good faith, and we are doing that here.
12 	We think it's somewhat unfair for plaintiffs to
13 come to the Court and say, well, they can win on this basis,
14 so they have to win on that basis.  We would like to win on
15 that basis as well as on the secondary basis, and we think
16 that it's better to litigate everything at once rather than
17 to engage in some haphazard strategy with plaintiffs' motion
18 for judgment on the pleadings that they concede they are
19 seeking Supreme Court review on only to argue later that we
20 should come back and relitigate part of this case.
21 	It's a logical -- it's not consistent with the way
22 that cases are typically managed, and we would argue that
23 it's inappropriate in this circumstance.
24 	THE COURT:  Let me ask one more question given the
25 situation with the New York challenge that has made its way

1  to the Supreme Court without any further fact-finding.
2      Do you know whether the City of New York objected
3  in that case to proceeding without further fact-finding?
4      MS. SCHELLER:  Your Honor, I'm not involved in that
5  litigation and cannot speak to it.  I would defer to my
6  opponent.
7      MR. PATTERSON:  Yes.  This is Pete Patterson for
8  the plaintiffs.
9      We actually represented the plaintiffs in the
10 district court in that case.  New York did not object.  They
11 actually filed a motion to dismiss.
12     And in terms of, you know, before the Supreme
13 Court, we don't think there would need to be a remand,
14 because if you look before the Supreme Court now, at issue in
15 the New York case there are social science issues, historical
16 issues.  There are dozens of amicus briefs on both sides of
17 the case addressing all sorts of issues.  All the evidence
18 that the court would need is before it.
19     And as Judge Posner said in the *Moore* case, these
20 are legislative facts.  If they want to build a record that
21 these things are dangerous and unusual, they can do that in
22 briefing and through citing social science evidence and those
23 sorts of things.  I'm sure they will have many amicus briefs
24 on their side if this case were to get to the U.S. Supreme
25 Court.  So there really is no need to build more of a record.

1        And in terms of not accepting a ground for victory,
2   the current Chief Justice when he was on the D.C. Circuit in
3   a case said, if there's no -- something to the effect that,
4   if there's no need to decide more, there's a need not to
5   decide more.
6        So they are entitled to victory. They are trying
7   not to accept it, I guess. But it just is a waste of
8   judicial resources. And potentially when you are dealing
9   with a fundamental right that we are alleging -- we are
10  suffering irreparable harm every day this is in place -- it's
11  just our view that it's inefficient and prejudicial to keep
12  the case in district court longer than it needs to be. No
13  offense to your Honor. But precedent controlled the outcome.
14       THE COURT: Well, the argument that -- go ahead.
15       MS. SCHELLER: I was going to say, if I may briefly
16  respond?
17       I think it's somewhat questionable that my opponent
18  should suggest the type and quality of evidence we would rely
19  upon to assert our defense.
20       So we are not satisfied in this particular case
21  with relying upon the efforts of potential amici related to
22  whether or not these weapons are dangerous and unusual and,
23  therefore, fall outside of the scope of Second Amendment
24  protection.
25       But beyond that, this particular point is an

1  important one because in *Friedman*, the Supreme -- excuse
2  me -- the Seventh Circuit assumed that these weapons received
3  Second Amendment protection and, therefore, launched into its
4  analysis.  So they said, assuming the Second Amendment
5  applies.
6      So while we do believe there is a basis for victory
7  under *Friedman* and, in fact, *Wilson*, we would like to
8  challenge the underlying premise that the Second Amendment
9  applies to these cases.
10     The plaintiffs filed this challenge.  They are the
11 ones who brought this fight to court.  It is somewhat
12 unusual, I think, that they are then refusing to allow us to
13 fight it and resolve it on the merits.
14     THE COURT:  Well, it's unusual on both sides,
15 obviously.  It's unusual for a defendant who has been invited
16 to take judgment in its favor to decline.  It's also unusual
17 for a plaintiff to file a lawsuit and make clear in its
18 initial filing that the lawsuit is doomed.
19     I guess what I'm wondering is whether -- let me
20 just point out.  I can see pragmatic reasons for not wanting
21 to proceed immediately with the Court of Appeals and for
22 creating a substantial record at this level.  I can see
23 pragmatic arguments for that because it is entirely possible,
24 as defendants point out, that the court could make a finding
25 based on well-developed facts that would provide an

1     alternative reason for judgment in favor of the defendant.
2     　　　　If we don't do that and the Court of Appeals takes
3     whatever action it may take, there is always the message that
4     gets sent by the decision that somehow everything has been
5     decided when perhaps it has not.
6     　　　　What I wonder -- at the same time -- I at the same
7     time recognize what Justice Roberts has said, as plaintiffs
8     point out, and what is generally the practice of -- good
9     judiciary practice, which is, if there is a difficult issue
10    that you don't need to reach, don't reach it.  If there is a
11    difficult reason and a simple reason for a case to be
12    decided, choose the simple one, and that would be ordinarily
13    what I would like to do here.
14    　　　　What I wonder, given the concerns that the
15    defendants -- the legitimate concern the defendants have
16    about this, is whether or not an order or judgment order that
17    we draft could make very clear that the defendants
18    acknowledge -- I'm sorry -- that the plaintiffs acknowledge
19    the need for additional fact-finding should the Court of
20    Appeals make a particular decision.
21    　　　　I would assume that you would be willing to do that
22    except for the fact that moments ago you told me that you
23    believe -- plaintiffs' counsel told me, that is, that you
24    believe that there is no real need for fact-finding because
25    all of the amicus briefs cover these issues -- these factual

1  issues substantially, and the facts are all legislative facts
2  anyway.  I don't know whether the defendants would agree with
3  that.
4        But my question, I guess, is:  Would the plaintiffs
5  be willing to draft language that makes it clear that they
6  recognize the need for fact-finding on the issue of
7  dangerousness should the Court of Appeals believe that we are
8  going to reach that issue?
9        MR. PATTERSON:  Your Honor, this is Pete Patterson.
10       And, no, we would not agree with that.  What I was
11 saying is that the defendants would be free to argue that,
12 and we could have a dispute about that.
13       But our view is that these are legislative facts
14 and not just amici, but the parties can brief those facts.
15 And it's shown very clearly in the *Moore v. Madigan* decision
16 that we cited that dealt with, has Illinois proven that its
17 ban on carrying firearms is substantially justified in terms
18 of public safety?  And that was on an appeal of a grant of a
19 motion to dismiss.
20       The parties were able to bring all the information
21 from the empirical literature before the Court in the
22 briefing.  Judge Posner evaluated all that, and he said,
23 typically when reviewing a motion to dismiss, we would remand
24 for further factual development.
25       But there are no adjudicative facts in this case.

1  These are all legislative facts.  There is no need to send it
2  back.  And he decided the case on the merits on an appeal
3  from a grant of a motion to dismiss.  And we submit that the
4  same procedure would be the proper one here as in the *Bruen*
5  case in the U.S. Supreme Court where the State of New York is
6  arguing that if the court is going to reverse, it should
7  remand.
8  　　　　　But, you know, I'm not going to prophecy which way
9  the United States Supreme Court is going to go, but there is
10 substantial evidence through the briefing of the parties,
11 through the briefing of the amici, and there is good reason
12 to think that the court is not going to remand it, but
13 instead will just decide the case because, again, these are
14 legislative facts.  Whatever facts would be developed in the
15 trial court are not going to be binding in the Court of
16 Appeals as with legislative facts because they are legal
17 issues, and they would be reviewed *de novo*.  The record would
18 not be closed.
19 　　　　　So no, we would not agree that there needs to be
20 further factual development.
21 　　　　　THE COURT:  What is the current status of the New
22 York case in the Supreme Court?  Is it fully briefed?
23 　　　　　MR. PATTERSON:  It's briefed, and it was argued
24 November 3rd, I believe.  We are no longer representing the
25 plaintiffs in that case, but we have been following it.  And

1  I anticipate probably a decision in June, I would guess.
2       THE COURT: Tell me what discovery you would want
3  to proceed with from the standpoint of the defendants if I
4  deny the plaintiffs' motion to take judgment against them.
5       MS. SCHELLER: Sure. Your Honor, we plan to
6  develop a record concerning the dangerous and unusual nature
7  of these weapons on multiple fronts.
8       First, we plan to disclose medical experts that
9  will discuss the types of injuries that can be caused by this
10 particular firearm as compared to handguns, which is a
11 deficiency noted by the Seventh Circuit in the discovery and
12 development of the record in the *Friedman* case.
13      We also intend to develop a record from law
14 enforcement concerning how difficult it is to engage in a
15 situation when an assault weapon is being used by someone
16 illegally at that moment.
17      So we plan to discuss how dangerous and unusual
18 these weapons are both in terms of the type of injuries that
19 can be caused, how many people can be injured in a specific
20 period of time, as well as the dangers and risks posed to law
21 enforcement by engaging with someone who is using one of
22 these weapons, including whether they can effectively resolve
23 a threat caused by a mass shooter, for example.
24      Those are the main topics and areas which we would
25 like to explore and develop. And I would like to point out

1    that those are not legislative facts.  These are facts that
2    go to the heart of the type of weapon and whether or not they
3    are dangerous and unusual, which is an area that has not been
4    well developed or defined by law in this circuit or in
5    others.
6              THE COURT:  What would be your expectation about
7    the timetable for completion of this discovery?
8              MS. SCHELLER:  Your Honor, we did submit a proposed
9    26(f) report.  Let me pull that up.  And I may tap one of my
10   colleagues, Ms. Yeddanapudi, to speak on that point.
11        (Brief pause.)
12             THE COURT:  In the meantime, I could look at the
13   docket submission.
14             MS. SCHELLER:  I'm sorry, your Honor.
15             THE COURT:  No problem.
16        (Brief pause.)
17             MS. SCHELLER:  Your Honor, assuming that everyone
18   can line up their experts in the event that the Court permits
19   discovery, we are proposing that discovery be completed by
20   May of 2022.  I think it's May 15th.
21             THE COURT:  I do recognize that the *Friedman*
22   decision -- the case law in the Seventh Circuit appears to
23   recognize -- appears to see a gap in the records that were
24   created in those cases and a suggestion that there was an
25   alternative basis for judgment.

1                I can see really powerful arguments in both
2    directions in this case, but I think the wiser course is to
3    develop a record, at least to some degree, given that we are
4    likely to have to wait until June.
5                If there were a decision rendered in the New York
6    case in the meantime earlier than June that suggests a
7    direction that we ought to be going in here, we can obviously
8    revisit the issue.
9                But I believe it's appropriate to allow some
10   discovery on the issues of the dangerousness of the
11   particular weapons at issue in this case, recognizing that
12   some of them may very well be legislative facts.  But that
13   aside, that does not necessarily mean that the district court
14   doesn't want to consider them.  And some of the facts may go
15   beyond that categorization in any event -- some of the
16   discovery that we would want to do.
17               So I will direct that you proceed with discovery.
18   And I would like to set a telephone status to make sure you
19   are on track, say, in February.
20               MR. PATTERSON:  Okay.  Thank you, your Honor.  Do
21   you want to set that now?
22               THE COURT:  Yes.  I am going to ask my deputy to
23   give us a date in mid to late February for a telephone
24   status.
25          (Brief pause.)

```
 1              THE CLERK:  I'm sorry.  I was on mute.
 2              How about February 25th at 9:00 o'clock?
 3              MR. PATTERSON:  That should work for plaintiffs.
 4              MS. SCHELLER:  Thank you, your Honor.  That date
 5   also works for the defendants.
 6              THE COURT:  I will talk to you then.
 7              Thank you.  Thanks for your submissions.  I know
 8   that I am in good hands with the lawyers here.  You have done
 9   a good job.  Thank you.
10              MR. PATTERSON:  Thank you, your Honor.  Appreciate
11   your time today.
12              THE COURT:  Sure.
13              MS. SCHELLER:  Thank you.
14         (An adjournment was taken at 11:36 a.m.)
15                       *    *    *    *    *
16   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
17
18   /s/ Frances Ward_____January 5, 2022.
     Official Court Reporter
19   F
20
21
22
23
24
25
```