# Exhibit A

**Complaint, *Goldman v. City of Highland Park*, No. 1:22-cv-04774
(N.D. Ill. Sept. 7, 2022) (Dkt. 1)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, and SUSAN KAREN GOLDMAN, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | |
| CITY OF HIGHLAND PARK, ILLINOIS, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs submit the following Complaint against Defendant City of Highland Park, Illinois (the "City").

### I. PARTIES

1. Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the City. NAGR represents the interests of its members who reside in the City. Specifically, NAGR represents the interests of those who are affected by the City's prohibition of commonly used firearms and magazines. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution and to continue to lawfully possess and/or transfer property that they lawfully obtained. But for the City's unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or

1

transfer lawful arms for self-defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

2. Plaintiff Susan Goldman is a resident of the City and a law-abiding citizen of the United States. She currently owns certain semi-automatic firearms that are putatively made illegal by the Code (defined below), and magazines capable of holding more than 10 rounds of ammunition. She has possessed this property lawfully for years but stores it outside of the city limits. She seeks to continue possessing her lawfully owned property, acquire additional arms putatively made illegal by the Code, and lawfully transfer property to others within the city limits. But for the City's restrictions on commonly used arms, and her reasonable fear of criminal prosecution for violating these restrictions, she would continue to possess her lawfully owned arms, acquire additional arms, and/or transfer them to others. She is especially aggrieved by the fact that the City's prohibitions require her to store her arms outside the city limits, which requirement renders the arms useless for the defense of her home.

3. Defendant City of Highland Park, Illinois is a city with an address of 1707 St. Johns Avenue, Highland Park, Illinois 60035.

4. Defendant is or will enforce the unconstitutional provisions of the Code against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

5. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to

redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## IV. GENERAL ALLEGATIONS

8. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

9. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra*.

10. This action challenges the constitutionality of certain provisions of the Highland Park City Code of 1968 (the "Code"). A copy of the relevant portion of the Code is attached hereto as Exhibit A.

11. Section 136.001 of the Code defines the term "assault weapon." Section 136.005 of the Code states in relevant part:

> No person shall manufacture, sell, offer, or display for sale, give, lend, transfer ownership of, acquire or possess any Assault Weapon or Large Capacity Magazine . . .

3

12.     The term "assault weapon" as used in the Code is not a technical term used in the firearms industry or community for firearms commonly available to civilians.  Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes.  Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint.  Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault weapon" in Section 136.001of the Code.

13.     Plaintiffs and/or their members currently own and possess Banned Firearms.  Plaintiffs and/or their members desire to continue to possess the Banned Firearms within the city limits of the City, and they wish to acquire more Banned Firearms, transfer their currently owned Banned Firearms to other persons in the City and bequeath their Banned Firearms to their devisees.  All of these constitutionally protected activities are made illegal by the Code.

14.     The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*, at 627.

15.     There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those banned by the Code.  The Supreme Court has held as much.  In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions. " *Id*., 511 U.S. 611-12 (identifying the AR-15 – the archetypal "assault weapon" – as a traditionally lawful firearm).  The vast majority of States do not ban they type of semiautomatic rifles deemed "assault weapons" in the Code.

16.     Millions of law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020)[1] ("Commonality is determined largely by statistics."); *Ass 'n of N.J Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass 'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' "). This is demonstrated by the AR-15 and other modern semiautomatic rifles, which epitomize the firearms that the City bans.

17.     The AR-15, as just one example among many of a Banned Firearm, is America's "most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Already in early 2013, sources estimated that there were five million AR-15s in private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar. 9, 2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).[2]

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

18.     Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms currently possessed by Plaintiffs. The Code's prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by Plaintiffs and/or their members violates the Second Amendment.

19.     Section 136.001 of the Code defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.

20.     The Code again uses politically charged rhetoric to describe the arms it bans. The Code's characterization of these magazines as "large capacity" is a misnomer. Magazines capable of holding more than 10 rounds are standard capacity magazines. Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in section Section 136.001 of the Code.

21.     Section 136.005 of the Code states in relevant part:

> No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any Assault Weapon or Large Capacity Magazine . . .

22.     Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate. *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

6

23. The magazines the City has banned unquestionably satisfy the "common use" test.

*Duncan III,*, 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

24. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen*, *supra*, Judge Traxler (whose dissenting opinion almost certainly accurately states the law post *Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds. Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

25. Magazines capable of holding more than 10 rounds of ammunition are commonly owned by millions and millions of Americans for all manner of lawful purposes, including self-defense, sporting, and hunting. They come standard with many of the most popular handguns and long guns on the market, and Americans own roughly 115 million of them, *Duncan IV*, 970 F.3d at 1142, accounting for "approximately half of all privately owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022). Indeed, the most popular handgun in America, the Glock 17 pistol, comes standard with a 17-round magazine. *See Duncan III*, 366 F.Supp.3d at 1145.

26. There can be no serious dispute that magazines capable of holding more than 10 rounds are bearable arms that satisfy the common use test and thus are presumptively protected by the Second Amendment. Law-abiding citizens own over 100 million magazines such as the Banned Magazines. The Code's prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

7

27. The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines. It therefore falls to the Defendant to justify its regulation as consistent with historical tradition rooted in the Founding. This it cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

28. In the post-*Bruen* decision of *Rocky Mountain Gun Owners v. The Town of Superior*, Case No. 22-cv-1685 (July 22, 2022), the court entered an order in which it restrained enforcement of certain provisions of a Town of Superior, Colorado ordinance that banned semiautomatic weapons and magazine with a capacity greater than ten rounds. The court held there was a strong likelihood that the plaintiffs in that case would prevail on the merits of their constitutional challenge to the ordinance provisions. The restrained ordinance is substantially identical to the ordinance provisions challenged in this action.

29. There is an actual and present controversy between the parties. The Code infringes on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes. Defendant denies these contentions. Plaintiffs desire a judicial declaration that the Code sections identified above, facially and/or as applied to them, violate their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. This is true even if certain provisions of the Code provide affirmative defenses to criminal prosecution. The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

30.     Plaintiffs are or will be injured by Defendant's enforcement of the Code sections identified above insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. If not enjoined by this Court, Defendant will enforce the Code in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

**V. FIRST CLAIM FOR RELIEF**
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

31.     Paragraphs 1-30 are realleged and incorporated by reference.

32.     The Code bans firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. The Code, therefore, generally prohibits residents of the City including Plaintiffs, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment. There are significant penalties for violations of the Code.

33.     These restrictions infringe on the right of the people of the City, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

34.     The Code's prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

35. Defendant cannot satisfy its burden of justifying these restrictions on the Second Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## VI. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

36. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Code sections identified herein are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

37. Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Code sections identified above;

38. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law;

39. Award actual compensatory and/or nominal damages; and

40. Grant any such other and further relief as the Court may deem proper.

Respectfully submitted this __ day of September 2022.

*/s/ Jason R. Craddock*

_____
Jason R. Craddock
Attorney at Law
2021 Midwest Rd., Ste. 200
Oak Brook, IL 60523
(773) 777-4440
cradlaw1970@gmail.com or craddocklaw@icloud.com

Barry K. Arrington*
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
(303) 205-7870
barry@arringtonpc.com
*Admission Pro Hoc Vice Pending*

*Attorneys for Plaintiffs*

11

# CITY OF HIGHLAND PARK

## ORDINANCE NO. \_\_\_\_

### AN ORDINANCE AMENDING CHAPTER 134 OF "THE HIGHLAND PARK CODE OF 1968," AS AMENDED, REGARDING ASSAULT WEAPONS

**WHEREAS,** Chapter 134 of "The Highland Park Code of 1968," as amended (***"City Code"***), regulates the manufacture, sale, and possession of firearms in the City; and

**WHEREAS**, the Constitution of the United States of America and the Constitution of the State of Illinois afford certain protections related to the ownership of firearms; and

**WHEREAS**, in *District of Columbia v. Heller*, the United States Supreme Court recognized that the Constitutional protections related to firearm ownership is not unlimited, and can be subject to certain types of governmental regulations; and

**WHEREAS**, in its *Heller* decision, the United States Supreme Court specifically acknowledged that the protections afforded by the Second Amendment to the Constitution of the United States does not extend to all types of firearms; and

**WHEREAS**, many courts throughout the nation have upheld local regulations restricting or prohibiting the ownership or possession of assault weapons, including, without limitation, the State of Illinois Appellate Court, the United States District Court for the District of Columbia, and the Court of Appeals for the State of California; and

**WHEREAS**, recent incidents in Aurora, Colorado; Newtown, Connecticut; Tucson, Arizona; and Santa Monica, California demonstrate that gun violence is not limited to urban settings, but is also, tragically, a reality in many suburban and small town locations as well; and

**WHEREAS**, the City Council has determined that assault weapons are not traditionally used for self-defense in the City of Highland Park, and that such weapons pose an undue threat to public safety to residents, property owners, and visitors within the City of Highland Park; and

**WHEREAS,** the City has previously encouraged the Governor and the Illinois General Assembly to enact statewide legislation banning the sale and possession of assault weapons; and

**WHEREAS,** to date, the State has failed to enact a statewide ban on the sale or possession of assault weapons; and

**WHEREAS,** on May 31, 2013, the Illinois General Assembly approved House Bill 183, as amended, which Bill contains a provision that would preempt the home rule authority of the City to regulate the possession or ownership of assault weapons, unless the City adopts such a regulation not later than 10 days after House Bill 183 becomes law; and

**WHEREAS,** pursuant to the home rule powers of the City, and in order to protect both the home rule authority of the City and the public safety and welfare, the City Council desires to amend Chapter 134 of the City Code to prohibit the manufacture, sale, ownership, acquisition, or possession of assault weapons within the City; and

**WHEREAS**, the City Council has determined that it will serve and be in the best interest of the City and its residents to amend the City Code pursuant to this Ordinance;

**NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF HIGHLAND PARK, LAKE COUNTY, STATE OF ILLINOIS,** as follows:

**SECTION ONE:** <u>RECITALS</u>. The foregoing recitals are incorporated into, and made a part of, this Ordinance as the findings of the City Council.

**SECTION TWO:** <u>FIREARMS CONTROL</u>. Chapter 134, entitled "Handgun Control," of Title XIII, entitled "Misdemeanors," of the City Code is hereby re-titled "Firearms Control".

**SECTION THREE**: <u>ASSAULT WEAPONS AND LARGE CAPACITY MAGAZINES</u>. Chapter 134, entitled "Firearms Control," of Title XIII, entitled "Misdemeanors," of the City Code is hereby amended to add a new Section 134.010, which Section 134.010 hereafter reads as follows:

<u>"Sec. 134.010  Assault Weapons and Large Capacity Magazines.</u>

(A) Whenever the following words and phrases are used, they shall, for purposes of this Section 134.010, have the meanings ascribed to them in this Section 134.010(A), except when the context otherwise indicates.

(1) "Assault Weapon" means

(a) A semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and one or more of the following:

(i) Only a pistol grip without a stock attached;

(ii) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) A folding, telescoping or thumbhole stock;

(iv) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

2

      (v)  A muzzle brake or muzzle compensator;

  (b)  A semiautomatic pistol or any semi-automatic rifle that has a fixed magazine, that has the capacity to accept more than ten rounds of ammunition;

  (c)  A semiautomatic pistol that has the capacity to accept a detachable magazine and has one or more of the following:

      (i)  Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

      (ii)  A folding, telescoping or thumbhole stock;

      (iii)  A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

      (iv)  A muzzle brake or muzzle compensator; or

      (v)  The capacity to accept a detachable magazine at some location outside of the pistol grip;

  (d)  A semiautomatic shotgun that has one or more of the following:

      (i)  Only a pistol grip without a stock attached;

      (ii)  Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

      (iii)  A folding, telescoping or thumbhole stock;

      (iv)  A fixed magazine capacity in excess of five rounds; or

      (v)  An ability to accept a detachable magazine;

  (e)  Any shotgun with a revolving cylinder;

3

    (f) Conversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person;

    (g) Shall include, but not be limited to, the assault weapons models identified as follows:

      (i) The following rifles or copies or duplicates thereof:

       (A) AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR;

       (B) AR-10;

       (C) AR-15, Bushmaster XM15, Armalite M15, or Olympic Arms PCR;

       (D) AR70;

       (E) Calico Liberty;

       (F) Dragunov SVD Sniper Rifle or Dragunov SVU;

       (G) Fabrique National FN/FAL, FN/LAR, or FNC;

       (H) Hi-Point Carbine;

       (I) HK-91, HK-93, HK-94, or HK-PSG-1;

       (J) Kel-Tec Sub Rifle;

       (K) Saiga;

       (L) SAR-8, SAR-4800;

       (M) SKS with detachable magazine;

       (N) SLG 95;

       (O) SLR 95 or 96;

       (P) Steyr AUG;

       (Q) Sturm, Ruger Mini-14;

4

|      |       |     |                                                                                  |
|------|-------|-----|----------------------------------------------------------------------------------|
|      |       | (R) | Tavor;                                                                           |
|      |       | (S) | Thompson 1927, Thompson M1, or Thompson 1927 Commando; or                        |
|      |       | (T) | Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz).       |
|      | (ii)  |     | The following pistols or copies or duplicates thereof:                           |
|      |       | (A) | Calico M-110;                                                                    |
|      |       | (B) | MAC-10, MAC-11, or MPA3;                                                         |
|      |       | (C) | Olympic Arms OA;                                                                 |
|      |       | (D) | TEC-9, TEC-DC9, TEC-22 Scorpion, or AB-10; or                                    |
|      |       | (E) | Uzi.                                                                             |
|      | (iii) |     | The following shotguns or copies or duplicates thereof:                          |
|      |       | (A) | Armscor 30 BG;                                                                   |
|      |       | (B) | SPAS 12 or LAW 12;                                                               |
|      |       | (C) | Striker 12; or                                                                   |
|      |       | (D) | Streetsweeper.                                                                   |

"Assault weapon" does not include any firearm that has been made permanently inoperable, or satisfies the definition of "antique firearm," stated in Section 134.001 of this Chapter, or weapons designed for Olympic target shooting events.

(2) "Detachable Magazine" means any ammunition feeding device, the function of which is to deliver one or more ammunition cartridges into the firing chamber, which can be removed from the firearm without the use of any tool, including a bullet or ammunition cartridge.

(3) "Large Capacity Magazine" means any ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include the following:

(a) A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds.

5

     (b) A 22 caliber tube ammunition feeding device.

     (c) A tubular magazine that is contained in a lever-action firearm.

  (4) "Muzzle Brake" means a device attached to the muzzle of a weapon that utilizes escaping gas to reduce recoil.

  (5) "Muzzle Compensator" means a device attached to the muzzle of a weapon that utilizes escaping gas to control muzzle movement.

 (B) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine. This Section 134.010(B) shall not apply to:

  (1) The sale or transfer to, or possession by any officer, agent, or employee of the City or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state; or peace officers, to the extent that any such person named in this Section 134.010(B)(1) is otherwise authorized to acquire or possess an assault weapon and/or large capacity magazine and does so while acting within the scope of his or her duties; or

  (2) Transportation of assault weapons or large capacity magazine if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person.

 (C) Any assault weapon or large capacity magazine possessed, sold or transferred in violation of Section 134.010(B) of this Chapter is hereby declared to be contraband and shall be seized and destroyed of in accordance with the provisions of Section 134.010(E) of this Chapter.

 (D) Any person who, prior to the effective date of this Section 134.010, was legally in possession of an assault weapon or large capacity magazine prohibited by this Section 134.010 shall have 90 days from the effective date of this Section 134.010 to do any of the following without being subject to prosecution hereunder:

  (1) To remove the assault weapon or large capacity magazine from within the limits of the City;

  (2) To modify the assault weapon or large capacity magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon or large capacity magazine; or

  (3) To surrender the assault weapon or large capacity magazine to the Chief of Police or his or her designee for disposal as provided in Section 134.010(E) of this Chapter.

6

(E) The Chief of Police shall cause to be destroyed each assault weapon or large capacity magazine surrendered or confiscated pursuant to this Section 134.010; provided, however, that no firearm or large capacity magazine shall be destroyed until such time as the Chief of Police determines that the firearm or large capacity magazine is not needed as evidence in any matter. The Chief of Police shall cause to be kept a record of the date and method of destruction of each Firearm or Large Capacity Magazine destroyed pursuant to this Chapter.

(F) The violation of any provision of this Section 134.010 is a misdemeanor, punishable by not more than six months imprisonment or a fine of not less than $500 and not more than $1000, or both."

**SECTION FOUR: PUBLICATION.** The City Clerk shall be, and is hereby, directed to publish this Ordinance in pamphlet form pursuant to the Statutes of the State of Illinois.

**SECTION FIVE: EFFECTIVE DATE.** This Ordinance shall be in full force and effect from and after its passage, approval, and publication in the manner provided by law.

AYES:

NAYS:

ABSENT:

PASSED:

APPROVED:

PUBLISHED IN PAMPHLET FORM:

ORDINANCE NO.

　　　　　　　　　　　　　　　　　　　　Nancy R. Rotering, Mayor

ATTEST:

Ghida S. Neukirch, City Clerk

#23629981_v4

7