IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CUTBERTO VIRAMONTES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 21 CV 4595 |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | Magistrate Judge Susan E. Cox |
| THE COUNTY OF COOK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY

Currently before this Court is a motion to stay proceedings in favor of a later-filed case brought by this case's same organizational Plaintiffs, *Harrel v. Raoul*, No. 3:23-cv-141 (S.D. Ill. Jan. 25, 2023). *Harrel* involves a challenge to Illinois's state-wide assault weapons ban, 720 ILCS 5/24-1.9, rather than the Blair Holt Assault Weapons ban ("the County Ordinance") that is the subject of this litigation, and was filed over a year after the present case. Nonetheless, Plaintiffs argue that *this* case should be stayed because, they say, they do not have a redressable injury in this proceeding so long as the state ban remains in effect. Plaintiffs are incorrect and their motion should be denied.

**I.      The Illinois State Ban does not affect Plaintiffs' standing in this case.**

At the outset, it is important to note that Plaintiffs' argument, if correct, would require this Court to dismiss this case for lack of subject-matter jurisdiction. Plaintiffs assert that passage of the Illinois state ban "bars effective relief for Plaintiffs in this case" because it causes them to remain unable to acquire assault weapons. Dkt. 70 at 2. Accordingly, they argue that if a stay is not granted in this case, "there is significant risk that the merits of this case…will not be reached because Plaintiffs' claims will not be redressable by this Court." Dkt. 70 at 4. This is effectively

an argument that this Court lacks standing, which requires (1) an injury in fact that is (2) caused by the defendant's conduct and (3) redressable by a favorable decision. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). If Plaintiffs were correct that striking down the County ordinance would not redress any injury, this court *couldn't* enter a stay (or take any other action on this case, for that matter) —it would have to dismiss for lack of jurisdiction. *See Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022) ("When a district court concludes that the plaintiff lacks standing—and thus that the court lacks jurisdiction—the judge may either dismiss without leave to amend or dismiss without prejudice.")

Standing is no hurdle here, however, because the state ban does not affect whether Plaintiffs have a redressable injury in this case, for the simple reason that Plaintiffs are subject to separate and additional penalties for violating the County Ordinance. Violation of the County Ordinance is a misdemeanor and carries a fine ranging from $5,000 to $10,000 and a term of imprisonment of up to six months. Cook County, Ill. Code § 54-214(a). Plaintiffs would face these penalties regardless of whether the state statute were in place. Cook County is a home rule unit pursuant to the Illinois constitution, which allows Cook County to "exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." ILLINOIS CONST. 1970, Art. VII, § 6(i). And it is long settled that firearm regulations are within this grant of authority, unless expressly taken away by state law. *Kalodimos v. Morton Grove*, 470 N.E.2d 266, 273–77 (Ill. 1984). The state statute contains no express language limiting the exercise of home rule powers, so Plaintiffs would be subject to the penalties imposed by the County ordinance regardless of whether the state law were in place.

These penalties alone are sufficient to confer standing. The requirements for redressability

are met if a favorable decision relieves *a* discrete injury—Plaintiffs "need not show that a favorable decision will relieve [their] *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982); *see also Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (explaining standing is proper where a favorable decision would relieve "some extent" of an injury). In *EPA*, the Court held that Massachusetts had standing to contest EPA's refusal to regulate greenhouse gas emissions from new motor vehicles. *Id*. at 526. If the law required complete redress, as Plaintiffs appear to believe it does, the Supreme Court would not have permitted Massachusetts to proceed in that case because there was no guarantee a favorable decision would mitigate future environmental damage, let alone redress it entirely. Similarly, even if the Plaintiffs face additional penalties so long as the state ban remains in place, the harms alleged by Plaintiffs would nonetheless be "reduced to some extent" if the Blair Holt Assault Weapons ban were deemed invalid and they may proceed in this matter. *Id.* at 526.

Nor do Plaintiffs offer any explanation as to why there would be no redressable injury in this case while one exists in *Harrel*. They contend only that the statewide ban is "broader" than the County ordinance "since it applies statewide." Dkt. 70 at 3. But they cite no authority that the number of people affected by a law is indicative of whether a redressable injury exists. Nor could they: a law's constitutionality is determined by its impact on those whose conduct it affects, not by the number of people affected. *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015).

**II.     A stay is inappropriate.**

Regardless, a stay in this matter would be inappropriate even assuming the state ban limits Plaintiffs' relief here. If Plaintiffs truly believe that they cannot ascertain full relief without challenging the state ban, they could have moved for mandatory joinder under Rule 19. The policy of Rule 19 is to "entertain[] the broadest possible scope of action consistent with fairness to the

3

parties; joinder of claims, parties and remedies is strongly encouraged." *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir. 1973) (quoting *United Mine Workers of America v. Gibbs*, 388 U.S. 715, 724 (1966)); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (explaining that the purpose of Rule 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources"). This requires joinder of parties without whom "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19 (1)(A). Although Plaintiffs assert that a stay is necessary because the state ban "stand[s] between them and effective relief," Dkt. 70 at 1, they offer no explanation as to why they did not attempt to join any necessary parties or attempt to challenge the state ban in this action.

The factors courts review in determining whether to grant a stay also weigh against staying this action. Courts look to "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Martinez v. Ralph Lauren Corp., Inc.*, 2022 U.S. Dist. LEXIS 54761 (N.D. Ill. Mar. 27, 2022) (citing *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)). The party seeking the stay has the burden of establishing its need for such relief. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Here, a stay will unduly prejudice Defendants, the non-moving party, while failing to reduce the burden of litigation. Defendants have already completed substantial discovery in this case. As Plaintiffs note, "the County has submitted hundreds of pages of expert reports from 11 different experts" and has "engaged in extensive written discovery in this case." Dkt. 70 at 4. Plaintiffs now seek to have that work product ignored while another court weighs in on a similar assault-weapons ban on a less-developed record. Delaying a ruling on this case amounts to prejudice where Defendants

have spent significant time and resources developing the record and are confident that the evidence and relevant authority supports their motion for summary judgment. *See Singleton v. B.L. Downey Co. LLC*, 2021 U.S. Dist. LEXIS 208668, *3 (N.D. Ill. Apr. 12, 2021) (Durkin, J.) (concluding that Defendants "would certainly be prejudiced by a delay since its motion to dismiss appears to be solidly supported by caselaw").

Similarly, a stay would not streamline this case nor preserve the resources of the court. If Plaintiffs truly sought judicial efficiency, they could have challenged the constitutionality of the statewide ban in the Northern District once that ban was enacted. *See AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 277 (7th Cir. 2003) ("[D]evices such as 28 U.S.C. § 1404(a) and 28 U.S.C. § 1407 exist for the total or partial consolidation of related cases from different districts."); FED. R. CIV. P. 20(a)(2)(A) (joinder of defendants appropriate where right to relief "arise[s] out of the same transaction, occurrence, or series of transactions or occurrences"); FED. R. CIV. P. 19. They have not attempted to do so, and the Blair Holt Assault Weapons Ban is not being challenged in the pending Southern District litigation. Nor would any decisions from the Southern District regarding the constitutionality of the similar state ban be binding upon this court. Although this court may find persuasive any decision of the Southern District, it is not mandatory authority. This Court would still ultimately need to reach its own decision on the merits of this case and the constitutionality of the County Ordinance. Thus, there is no reason this Court should grant a stay in this case to wait for a decision in *Harrel*.

**III.     If Plaintiffs are correct that the cases are duplicative, the first-filed rule applies.**

Even if Plaintiffs were correct that the lawsuits are "duplicative," Dkt. 70 at 3, the first-to-file rule would apply and *Harrel* should be stayed in favor of this case. The first-to-file rule grants district courts discretion to dismiss, transfer, or stay a second-filed case when actions filed in a separate

federal court are sufficiently duplicative. *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 888–89 (7th Cir. 2012); *Tripp Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995); *Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004) (explaining that when "two similar actions are filed" in different federal courts, "the general rule favors the forum of the first-filed suit.") Suits are duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *McReynolds*, 694 F.3d at 889 (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons*, 572 F.Supp. 1210, 1213 (N.D. Ill. 1983)). If suits pending in separate districts are duplicative, the "first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 980 (7th Cir. 2010).

Plaintiffs clearly believe that this case and *Harrel* are duplicative. They contend that this suit and the Southern District litigation involve "two very similar and overlapping laws" and that, accordingly, "[l]itigation over one is likely to be duplicative of the other." Dkt. 70 at 3. This "overlap" is the entire basis of their request for a stay in this case. If Plaintiffs are correct that the suits are duplicative, there would be a rebuttable presumption that this case be the one to proceed. *See Asset Allocation & Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 573 (7th Cir. 1989) (explaining that there is a rebuttable presumption that the first case that establishes jurisdiction should be allowed to proceed, "subject to the principles that govern requests for transfer to a more convenient forum.").

True, the Seventh Circuit "does not rigidly adhere to a first-to-file rule." *Research Automation*, 626 F.3d at 980. For instance, courts have departed from this rule "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief." *Id.* (collecting cases). The later filed suit may also be preferred "where one party files its lawsuit in

anticipation of an impending suit by the opposing party." *Id*. These situations are not present here, however, and Plaintiff has argued only that the second-filed suit should proceed because it involves a "broader" ban. Dkt. 70 at 3. They have cited no authority that staying the first-filed case is appropriate in such circumstances.

In fact, the principles that govern requests for transfer support continuing to litigate this case here. These principles include whether allowing the first-filed case to proceed furthers the "interests of justice" and the "convenience" of parties and witnesses. *Research Automation*, 626 F.3d at 978. Although typically some deference is given in the convenience analysis to a plaintiff's choice of forum, such deference is inapplicable in cases like this, where the organizational plaintiffs brought both this and the "duplicative" suit. *See id.* at 979 (explaining that "this factor loses its significance entirely" where "the case involves two identical suits in distinct venues"). Further, the "interests of justice"—a term relating to "the efficient administration of the court system"—support this case being prioritized. *Id.* at 978. As Plaintiffs note, "[t]he parties have engaged in extensive written discovery in this case, they have taken several depositions, and the County has submitted hundreds of pages of expert reports from 11 different experts." Dkt. 70 at 4. Meanwhile, no discovery has been completed in *Harrel* and the case is at the preliminary injunction stage. *See Harrel, et al. v. Raoul, et al.,* 3:23-cv-141 (S.D. Ill. Jan. 25, 2023). Because this Court has invested significant time into the first-filed case, giving this litigation preference is best for judicial economy.

The avoidance of forum shopping is also an important consideration in evaluating the interest of justice. *See Research Automation*, 626 F.3d at 979 n.2 (7th Cir. 2010); *see also Atl. Marine Constr. Co. v. United States Dist. Court,* 571 U.S. 49, 65 (2013) ("§ 1404(a) should not create or multiply opportunities for forum shopping"). As previously stated, Plaintiffs chose not to challenge the state ban in this matter. Instead, after over a year of litigating this matter and extensive discovery, Plaintiffs

7

appear to have become dissatisfied with these proceedings and now prefer a new forum for their claims. They should not be permitted to manipulate the litigation here just to receive a clean slate in the Southern District. *See Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir. 1982) ("Since the first court to decide the dispute will bind the other, the maintenance of an extra action will have a perceptible effect upon proceedings in the original action if the parties there attempt to accelerate or stall the proceedings in order to influence which court finishes first. The result would be quite similar to forum shopping, and is just as unseemly.")

IV. Conclusion.

This Court should deny Plaintiff's motion for a stay.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

*/s/ Jessica M. Scheller*
Jessica M. Scheller
Jessica Wasserman
Cook County Assistant States Attorneys
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-6934
Jessica.scheller@cookcountyil.gov

8

## CERTIFICATE OF SERVICE

I, Prathima Yeddanapudi, hereby certify that on February 15, 2023 I have caused a true and correct copy of Response to Motion for Stay be sent via e-filing to all counsel of record in accordance with the rules regarding the electronic filing and service of documents.

*/s/Prathima Yeddanapudi*

Cook County Assistant State's Attorneys
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-5463
Prathima.yeddanapudi@cookcountyil.gov