IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | |
|---|---|
| CUTBERTO VIRAMONTES, et al. : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 1:21-cv-04595 |
| v. : | |
| : | Chief Judge Rebecca R. Pallmeyer |
| THE COUNTY OF COOK, et al. : | |
| : | |
| Defendants. : | |

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Plaintiffs, by and through undersigned counsel, for their Opposition to Defendants' Motion to Strike, states as follows:

**Introduction**

Defendants' motion to strike must be denied, as it completely ignores the key distinction between adjudicative facts and legislative facts. Adjudicative facts are "facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent." Fed. R. Evid. 201, 1972 Advisory Committee Note. Legislative facts, on the other hand, concern general facts about the world that transcend the immediate activities of the parties; they "are those which have relevance to legal reasoning . . . in the formulation of a legal principle or ruling by a judge or court." *Id*. In a facial constitutional challenge like the one made by Plaintiffs, *all* of the facts going to the merits of the dispute are legislative in nature. That is because in a facial constitutional challenge, "[o]nce standing is established, the plaintiff's personal situation becomes irrelevant." *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011). Adjudicative facts—the who, what, when, and where facts concerning the parties—do not matter. Rather, what will determine the outcome of this case are "facts that bear on the justification for" Cook County's semiautomatic

1

firearm ban, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), measured against the methodology prescribed by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Those facts are all legislative in nature, and the Court properly may consider all of the information Plaintiffs have submitted for its consideration. Indeed, the Court's review of information is entirely unlimited beyond the limits "already inherent in affording opportunity to hear and be heard and exchanging briefs." Fed. R. Evid. 201, 1972 Advisory Committee Note.

In light of the distinction between legislative and adjudicative facts, the County's motion to strike clearly lacks merit. In support of its motion for summary judgment, the County submitted 339 separate statements of allegedly material facts, covering topics such as the suitability of the banned firearms for defensive use, the ballistic performance of some common rifle ammunition, the history of gunpowder storage laws at the Founding, and the history of the development of the banned firearms. Information on these subjects and everything else in the County's statement of material facts other than specific facts about the parties are legislative facts, not adjudicative facts. Plaintiffs properly engaged the County's assertions to show through publicly available sources that the County was wrong about the nature of the banned firearms and their use, history, and characteristics. The County now seeks to blind the Court to any and all contradictory evidence and wrongly complains that the Plaintiffs' citation to these publicly available sources amounts to improper legal argument, seeks to focus the Court's attention on inadmissible evidence, and was not properly disclosed through expert witness testimony. But the County's arguments are predicated on a failure to recognize that the facts at issue are legislative facts. Legislative facts necessarily are bound up with legal argument, they are exempt from the ordinary limitations

imposed by the rules of evidence, and they need not be presented through expert witnesses. As a result, the Court should deny the County's motion to strike.

## Argument

### I. This Case Turns On Legislative Facts, And The Court Is Unrestricted In Its Review Of Them.

The County's motion is based on a fundamental misunderstanding of the types of facts at issue in this case and the rules that govern them. The vast majority of the 339 allegedly material facts that the County put forward in support of its motion for summary judgment are legislative facts rather than adjudicative facts. "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, 1972 Advisory Committee Note. They are facts "about the parties and their activities, businesses, and properties, as distinguished form general facts which help the tribunal decide questions of law and policy and discretion." *Langevin v. Chenango Ct., Inc.*, 447 F.2d 296, 300 (2d Cir. 1971) (Friendly, C.J.) (quotation marks omitted). "Legislative facts, on the other hand, are those which have relevance to the legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court in the enactment of a legislative body." Fed. R. Evid. 201, 1972 Advisory Committee Note. Legislative facts are, in other words, "facts relevant to shaping a general rule." *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990). "The concept of a legislative fact comes into its own when there is no reason to believe that certain facts pertinent to a case vary from locality to locality, or from person to person." *Frank v. Walker*, 773 F.3d 783, 795 (7th Cir. 2014) (Posner, J., dissenting from denial of reh'g en banc).

With these principles in mind, it is not difficult to separate the legislative facts presented by the County's statement of material facts from the adjudicative ones. For example, Statement 14, "Viramontes lives in a two-unit apartment building," deals with a fact that is specific to a

3

plaintiff in this litigation. In another case that raises the constitutionality of restrictions on common semiautomatic rifles, the plaintiff may live in a townhouse, or a much larger apartment building, or he too may live in a two-unit building—but Viramontes' living situation is specific to Viramontes, and to this case. *See* Pls.' Resps. & Objs. to Defs.' Rule 56.1 Statement of Material Facts at 8, Doc. 98 (Apr. 24, 2023) ("Pls.' Resps."). It is an adjudicative fact. By contrast, Statement 34, "A shotgun disperses shot in a conical pattern, expanding in an ever-larger pattern as it travels, as opposed to a round from an AR-15, which travels like a laser beam," is not a fact particular to this case. *Id.* at 22. The way shotgun shot spreads, and the way a rifle round travels, is not different for Viramontes or Khaya than it is for any other person. These things are governed by the laws of physics and "appl[y] broadly to the state of the world." *United States v. Turner*, 47 F.4th 509, 525 (7th Cir. 2022).

  This distinction is important for several reasons. *First*, legislative facts are ordinarily not found through trials, and they need not be submitted to a jury. *See Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 227 (1908) (Holmes, J.) ("A judge sitting with a jury is not competent to decide issues of fact; but matters of fact that are merely premises to a rule of law he may decide."). As the Seventh Circuit has explained in the Second Amendment context, "[o]nly adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law." *Moore*, 702 F.3d at 942. As a result, "judicial access to legislative facts" is unrestricted—and "any limitation in the form of indisputability, any formal requirement of notice other than those already inherent in affording an opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level" is "inappropriate." Fed. R. Evid. 201, 1972 Advisory Committee Note. The Rules of Evidence simply do not apply. *See, e.g.*, *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995) ("The constitutionality of statutes is typically determined by reference to

4

general considerations, values, intuitions, and other 'legislative facts' (in the sense of considerations that typically influence legislative judgments) rather than to facts presented through testimony and other formal evidence subject to rules of evidence developed largely for the control of lay juries."). These facts are not ordinarily presented through testimony and cross-examination, but "more often are facts reported in books and other documents not prepared specially for litigation or refined in its fires." *Indiana Harbor Belt*, 916 F.2d at 1182. As a result, not only are the parties not required to "lay a foundation" for evidence of legislative facts, or present it in admissible form for summary judgment, the Court may itself investigate these matters, and can rely on sources put forward by *no* party. Fed. R. Evid. 201, Advisory Committee Note ("[T]he judge is unrestricted in his investigation and conclusion. He may reject the proposition of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present.") (quotation marks omitted).

*Second*, legislative facts are not subject to the limitations in the rule of evidence governing judicial notice, which expressly "governs judicial notice of an adjudicative fact only, not a legislative fact." *See* Fed. R. Evid. 201(a). This stems from the "fundamental differences" between legislative and adjudicative facts. *Id.*, 1972 Advisory Committee Note. The factual underpinnings necessary for deciding a broad rule of law—such as the constitutional contours of the Second Amendment—may rarely satisfy the rules for judicial notice. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 815 n.7 (2013) (Alito, J., dissenting) ("At times, the trial reached the heights of parody, as when the trial judge questioned his ability to take into account the views of great thinkers of the past because they were unavailable to testify in person in his courtroom."). And courts

5

making such consequential decisions, with implications far beyond the parties to the particular case, should not face any limitations on their ability to consider *all* relevant facts.

*Third*, appellate courts give *de novo* consideration to findings of legislative fact. *See Free v. Peters*, 12 F.3d 700, 706 (7th Cir. 1993) ("The district judge announced a rule; and appellate review of rules, and therefore (it follows) of the social scientific or other data on which the rules are based, is plenary."); *United States v. Singleterry*, 29 F.3d 733, 740 (1st Cir. 1994) ("The clear error standard does not apply . . . when the fact-finding at issue concerns 'legislative' . . . facts."); *Dunagin v. Oxford, Miss.*, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (en banc) (Reavley, J., plurality op.); *Lockhart v. McCree*, 476 U.S. 162, 169 n.3 (1986) (declining to decide the standard of review but noting the Court was "far from persuaded . . . that the 'clearly erroneous' standard of Rule 52(a) applies to the kind of 'legislative' facts at issue here"). Unlike adjudicative facts, legislative facts undergird broad legal rulings that are binding in future cases, so deferring to district court findings of legislative fats could result in an important legal issue turning, for the entire circuit (or the whole federal judiciary), on a single trial court's determination of contested issues of social science, sociology, or economics. *See Dunagin*, 718 F.2d at 748 n.8 (Reavley, J., plurality op.); *see also Windsor*, 570 U.S. at 815 n.7 (Alito, J., dissenting) ("[S]ome professors of constitutional law have argued that we are bound to accept the trial judge's findings—including those on major philosophical questions and predictions about the future—unless they are 'clearly erroneous.' . . . Only an arrogant legal culture that has lost all appreciations of its own limitations could take such a suggestion seriously.").

*Fourth*, when addressing legislative facts, appellate courts are not limited by the record below. In evaluating district court decisions based on legislative facts, "[i]nsisting on a cramped notion of what is part of the record is particularly inappropriate." *United States v. Hunt*, 63 F.4th

1229, 1250 (10th Cir. 2023). This is consistent with the practice of the highest court in the Nation, as "the writings and studies of social science experts on legislative facts are often considered and cited by the Supreme Court with or without introduction into the record or even consideration by the trial court." *Dunagin*, 718 F.2d at 748 n.8 (Reavley, J., plurality op.) (collecting examples). Indeed, "courts sometimes rely on nothing more than the personal intuitions of its members (as when it selected the burden of persuasion for libel actions based on how it thought the press would react to different standards [citing *New York Times v. Sullivan*, 376 U.S. 254, 282 (1964)]), and they sometimes rely on their review of sources never presented to the court (as with the *per curiam* majority in *Bush v. Gore*, 531 U.S. 98, 103 (2000), and Justices Stevens and Breyer on multiple occasions, including for the court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142-1423 (1999)." *Hunt*, 63 F.4th at 1251 (citations omitted).

The Supreme Court's Second Amendment jurisprudence exemplifies the way in which courts handle legislative facts. In *District of Columbia v. Heller,* for example, for the proposition that handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," the Court cited not to record "evidence" but to the D.C. Circuit's decision below. 554 U.S. 570, 628–29 (2008). The D.C. Circuit, in turn, had likewise eschewed reliance on a "record"—the court was sitting in review of a judgment granting a motion to dismiss, after all— but had supported this conclusion by citing directly to one of the very same social science papers that Plaintiffs have cited here. *See Parker v. Dist. of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007) (citing Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence & Nature of Self-Defense with a Gun*, 86 J. CRIM. L. & CRIMINOLOGY 150 (1995)); *see also* Pls.' Resp. at 19 (citing the same). And in *Heller*, the Court declined to grant the Department of Justice's request to build out portions of the record that purportedly were lacking—including "whether, and to what extent,

7

long guns provide a functionally adequate alternative to handguns for self-defense in the home," preferring to consider such issues itself on the basis of legislative facts available to it. *See* Br. for the United States of America at 31 n.9, *District of Columbia v. Heller*, No. 07-290 (Jan. 11, 2008).

In his *Caetano v. Massachusetts* concurrence, Justice Alito quoted a Michigan Court of Appeals decision for the proposition that "hundreds of thousands of Tasers and stun guns have been sold to private citizens." 577 U.S. 411, 420 (2016) (Alito, J., concurring) (cleaned up). That decision based its conclusion on a law review article which, in turn, relied on "a newspaper article from 1985." *See People v. Yanna*, 824 N.W.2d 241, 245 n.5 (Mich. Ct. App. 2012). And *Bruen* is no different. In *Bruen* there was *no* district court record—the district court had entered judgment on the pleadings because Bruen's claims were foreclosed by circuit precedent when the complaint was filed. *See New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143 (N.D.N.Y. 2018). In holding that New York's may-issue licensing scheme violated the Second Amendment, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record" relating to the operation of New York's law. *Bruen*, 142 S. Ct. at 2135 n.8. "[I]n light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the latter being a type of legislative fact that the County would seek to limit to a narrowly defined record, the conclusion "that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense" did not require development of any adjudicative facts. *Id.*

Seventh Circuit precedent is just as clearly on Plaintiffs' side. In *Moore*, the Seventh Circuit reversed a pair of district court orders dismissing Second Amendment challenges to an Illinois law that flatly banned public carry of firearms. 702 F.3d at 942. But the Seventh Circuit went further

8

than merely reversing—it remanded with instruction to grant summary judgment to plaintiffs, explaining that while "adjudicative facts are determined in trials . . . *only* legislative facts are relevant to the constitutionality of the Illinois gun law," so no record development was necessary. *Id.* (emphasis added). And in *Ezell*, the Seventh Circuit, again confronting a facial challenge to a restrictive statute regulating the right to keep and bear arms, explained that "[i]n a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant. It is enough that we have only the statute itself and the statement of basis and purpose that accompanied its promulgation." 651 F.3d at 697 (cleaned up). And as in *Heller* and *Bruen*, the Seventh Circuit in *Ezell* undertook an analysis of the history of regulating firearm range training through reference to original historical and secondary sources which it cited without reference to a narrow "record." *See id.* at 704-05, 709-10.

Putting these things together, *Ezell* and *Moore* show that, once standing is established *the only* facts that are relevant to a case like this one are "legislative facts." Plaintiffs' standing is established by record evidence, and for all other "facts" in this case it would be inappropriate for the Court to limit itself to a narrow record, as the County urges—especially since the Seventh Circuit will exercise plenary review and be free to look at any and all legislative facts it views as helpful to resolving this case, whether this Court did so first or not.

**II.      The County's Motion to Strike Offers No Valid Reason to Strike Plaintiffs' Rule 56.1 Response.**

**A. Plaintiffs Responses Declining to Dispute Certain Facts Should Not Be Stricken.**

The County's first objection is to Responses 1–5, 36–54, 125, 170–71, 328–30, and 337–38, to which Plaintiffs responded (at least in part) "Plaintiffs presently lack knowledge and, on that basis, decline to dispute at this time." *See* Mot. to Strike Pls.' Resps. & Objections to Defs.' Rule 56.1 Statement of Material Facts & Exs. at 4, Doc. 104 (May 8, 2023) ("Mot."). There is no need

to strike these responses (which, in some cases, include additional related statements of fact). By saying Plaintiffs decline to dispute them at this time, it follows that they are to be treated as admitted for purposes of the County's summary judgment motion.

### B. Plaintiffs' Responses Do Not Contain Improper Legal Argument.

The County argues that the majority of Plaintiffs' responses should be stricken for including "improper legal argument." *See id.* at 5. But the few illustrative examples it provides do not contain legal argument at all. Instead, the responses the County highlights consist of facts that are directly responsive to the statements which they are offered to dispute. For instance, the County's first example is Plaintiffs' response to Statement 4, in which the County charges Plaintiffs with "present[ing] legal argument quoting from and citing articles by" Christopher Koper, Vincent J.M. DiMaio, and Stephen Halbrook, *see id.* at 7–8, but none of these citations discusses the law at all. Instead, what they do discuss is the wounding power of the banned rifles as compared to other firearms, an issue that is responsive to the County's statement, *see* Pls.' Resps. at 2–3. The Halbrook citation, for instance, is to a statement that common rifle ammunition at the Founding was much larger than the ammunition fired by most AR-15s today. *Id.* It is hard to understand—and the County fails to explain—how such a statement could be construed as a legal argument.

The County objects to Plaintiffs offering factual responses too. The County claims that any "additional statements of fact that Plaintiffs claim contradict the meaning or implication of Defendants' facts . . . should be asserted" separately in a statement of additional facts. Mot. at 5. But Plaintiffs' responsive statements, which tend to show that the County's statements are in fact *not* true and are certainly not undisputed, complied with Local Rule 56.1(e)(2), which permits parties to assert "fairly responsive" facts in the process of disputing a fact. Nor is there a requirement that the Plaintiffs' response approximate the length of the fact asserted. The County

10

complains, discussing Statement 20, that in response to a one-sentence statement, Plaintiffs submitted a five-page response. Mot. at 9. But again, Plaintiffs response consists of factual assertions that dispute the County's statement. And though it was only one sentence, the statement to which Plaintiffs were responding was an exceptionally broad one—"[a]ssault weapons, whether rifles or handguns, are a poor choice for home defense or personal protection"—and it merited a significant response. Pls.' Resps. at 8. Plaintiffs' response, and the facts and sources cited therein, all related to whether the banned firearms are, in fact, useful for self-defense, including detailed explanations of how the features of the banned firearms aid in accurate firing and reduce recoil, *see id.* at 9–11, and proof that millions of Americans in fact *have* chosen to own the banned firearms for the very purpose for which the County believes it is qualified to decide they are "a poor choice," *see* Pls.' Resp. at 12–13. Such a response is perfectly appropriate to the County's broad assertion of unsuitability, and in any event, by putting all those responsive facts in one place, Plaintiffs were being efficient and seeking to make the Court's job in reviewing the large filing easier. Those same facts were implicated repeatedly by the County's erroneous assertions, and Plaintiffs referenced their response to Statement 20 several times in response to other statements. *See*, *e.g.*, *id*. at 14, 16–19, 21–22, 29–30, 39–41, 48, 52–54.

Finally, even if the County were right, either in stating that Plaintiffs' statements amounted to legal argument, or that their factual responses were better suited for separate statement, that would not matter. The responses to which the County levies this objection are all, as Plaintiffs have explained above, responses to statements of "legislative fact." Legislative facts are, themselves, more akin to legal argument than they are to statements of adjudicative fact, which is why "[a] judge sitting with a jury" may herself resolve disputes over them. *See Prentis*, 211 U.S. at 227. And to the extent that Plaintiffs are faulted for discussing them in the response to the statement of

material facts (ordinarily reserved for *undisputed* and *adjudicative* facts), the County deserves the lion's share of the blame, since it raised these issues in its statement of facts in the first place. In any event, the statements (and responses) were not improper to include in the Rule 56.1 submission, just as they could have been set forth directly in the briefs of both parties. "[Legislaitve] facts and the sources from which they are derived could be incorporated in the argument section of the brief, but they can with equal propriety be set forth in the statement of facts." *Wiesmueller v. Kosobucki*, 547 F.3d 740, 742 (7th Cir. 2008) (discussing Seventh Circuit Rule 28). In other words, Plaintiffs could have sought additional pages in their opposition brief and included all their factual citations there, but it was not improper for them to prefer to respond to the facts in the same place where the County chose to assert them. Indeed, it was imperative to address the facts where the County asserted them to avoid any charge that Plaintiffs have conceded that the County's assertions are undisputed.

### C. Plaintiffs' Responses Rely On Evidence This Court Can Consider At Summary Judgment.

Next, the County objects that the sources Plaintiffs have cited are not admissible, either because they lack a proper foundation, have not been authenticated, or are hearsay. Mot. at 6. On this basis, the County again urges the court to strike nearly all of Plaintiffs' substantive responses. But again, this argument is meritless because the County has failed to appreciate that the facts in question are legislative facts "that lie outside the domain of [the] rules of evidence." *Wiesmueller*, 547 F.3d at 742. Therefore, whether the sources Plaintiffs have cited are "unauthenticated, inadmissible hearsay, [or] violate[] the best evidence rule" is irrelevant. *United States v. Silvers*, No. 5:18-cr-50, 2023 WL 2714003, at *8 (W.D. Ky. Mar. 30, 2023); *see* 1 Mueller & Kirkpatrick, Fed. Evid. 2:12 (4th ed. Thomson Reuters/Westlaw 2013) ("[T]he Rules do not regulate . . . any aspect of noticing legislative facts.") (quoted in *Silvers*, 2023 WL 2714003, at *8).

The County makes the related argument that the responses should be stricken because Plaintiffs did not disclose each source as an expert report and so "Plaintiffs may not rely upon the opinions of these authors as expert witnesses." Mot. at 7; *see also id.* at 11. The County complains that without disclosure of all of these cited sources, they have been forced "to respond to arguments in summary judgment advanced by witnesses who have not been subject to cross-examination to assess the subject matter of their opinions, or whether the witnesses satisfy the *Daubert* standard." *Id.* at 12. These arguments also fail because of the crucial legislative/adjudicative fact distinction. Plaintiffs are not relying upon the documents (or their authors, some of whom are no longer living) as experts in this matter, they are merely sources of information regarding the general facts about the world that are relevant to this matter. It is perfectly ordinary for this Court to rely on information that was not "developed through testimony and cross-examination" and "documents not prepared specially for litigation or refined in its fires" to establish legislative facts. *Indiana Harbor Belt*, 916 F.2d at 1182. And *Daubert* does not apply here, where the Court is given wide latitude to consider sources that bear on legislative facts. *See Hunt*, 63 F.4th at 1250-51.

D.  **The County's Alternative Relief Should Be Denied**

The County seeks, in the alternative, to strike every source Plaintiffs cite in their responses to the County's factual statements. The County's basis for requesting this relief is the same as its basis for requesting that the responses themselves be struck: "Plaintiffs have not presented any witness testimony which would establish a foundation, authenticate the data, or the methodology used to obtain the data" in the publicly available sources, the sources are hearsay, and in general, the evidence is inadmissible. Mot. at 12–13. For the same reason that these arguments were insufficient to strike the responses themselves—namely, that the facts in question are legislative

13

facts and the Court's review of them is unrestricted—they do not support striking the exhibits either.

## Conclusion

For the foregoing reasons, the Court should deny the County's motion to strike.

Dated: May 22, 2023

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

Respectfully Submitted,

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
    *Admitted p*ro hac vice*

*Attorneys for Plaintiffs*